IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ST. GREGORY CATHEDRAL SCHOOL and ADK QUARTER MOON, LLC, on behalf of themselves and all others similarly situated, | § § § § | |
| | § | Case No. 6:12-CV-739 |
| Plaintiffs, | § | |
| | § | |
| v. | § | Jury Demand |
| | § | |
| LG ELECTRONICS, INC., a South Korean corporation, and LG ELECTRONICS U.S.A., INC., a Delaware corporation, | § § § | |
| | § | |
| | § | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT

St. Gregory Cathedral School and ADK Quarter Moon, LLC, as owner of the Esmeralda

Inn (collectively "Plaintiffs"), individually and on behalf of all others similarly situated ("Class

Members"), allege on personal knowledge and on information and belief as follows:

### I.      NATURE OF THE ACTION

1.      Plaintiffs bring this class action for actual and other damages, equitable relief

(including restitution, injunctive relief, and disgorgement of profits), and all other relief available

on behalf of themselves and all similarly-situated individuals and entities who have purchased or

own air conditioners manufactured by LG Electronics, Inc. ("LG Korea") and sold by LG

Electronics U.S.A, Inc. ("LG USA" and collectively "LG") since 2007 ("Affected Products") that

contain inherent and latent design and manufacturing defects including, but not limited to,

thermistors, sensors, fan motors, remote controls, condensers, compressors, wiring, boards,

inadequate internal insulation, and/or other internal parts ("Inherent Defects").  These Inherent

Defects cause the air conditioners to fail to function as promised and prematurely fail thereby

1

causing the Plaintiffs and the Class Members to incur costs and expense in repairs, maintenance, and replacement of the defective air conditioners.

2.      The defective air conditioners do not perform their essential function of heating and/or cooling rendering them useless or of significantly diminished value long before the end of their reasonably expected useful life.   The defects also present risks to the safety of consumers due to the inability to control the temperature in the rooms and/or building where they were installed.   They also present a hazard of potential mold due to excessive condensation.

3.      All of the claims asserted herein arise out of LG's design, manufacture, advertising, selling, warranting, and servicing of the Affected Products since 2007.

4.      On information and belief, LG began designing, manufacturing, marketing, advertising, and selling the Affected Products to thousands of consumers throughout the United States commencing in or around 2007.

5.      LG knew or was reckless in not knowing, at or before the time it sold the first unit, that the Affected Products contained Inherent Defects and that the air conditioners would fail prematurely due to these defects.   LG had sole and exclusive possession of this knowledge.

6.      Despite this knowledge, LG made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the Affected Products, which LG knew to be defective, both at the time of sale and on an ongoing basis.

7.      For its Inverter products (also known as "Splits"), LG made the following (and substantially similar) representations from 2007 to date:

- "For ease of installation, energy efficiency and quiet performance, duct-free systems are the smart choice";

- "Splits provide "CUSTOMIZED COMFORT…FOR LESS";

- "Whether you're creating a quiet, comfort controlled room, or simply want

to heat or cool an area without expensive ductwork, LG's duct-free systems set a new standard for efficiency, great looks and comfort.";

- "Duct-free systems are much simpler and economical to install because they only have three basic parts: an outdoor condensing unit, an indoor unit, and the components that connect the two.";

- "Duct-free systems are ideal for home or office additions, to replace unsightly window units, and for renovations or retro-fits where it's important to preserve the building's original appearance.";

- "THE BENEFITS OF DUCT-FREE

    - Fast installation – With no costly ductwork, duct-free systems can be installed in places where conventional ducted systems simply can't go.

    - Incredibly quiet – Indoor units operate at just 26 dB (the level of softly rustling leaves!).

    - Custom temperature control – It's easy to precisely maintain the temperature in each room.

    - Attractive design – Choose from a wide variety of elegant looks to enhance any interior decor.";

- "LG's cutting-edge features:

    - **Reduced energy costs.** You can cut your cooling bill with LG's energy-efficient technology. Look for our **Inverter Air Conditioners** featuring high-performance variable-speed compressors and our **Multi Power System™** with exclusive dual compressor technology.

    - **Cleaner, healthier air.** Plasma air purifying technology ensures cleaner, fresher air.

    - **Better air circulation.** Computer controlled louvers and fan speeds minimize temperature differences in the room.

    - **High-speed cooling.** Powerful Jet Cool feature quickly cools warm rooms down to a comfortable temperature.

    - **Built to last.** The exclusive GoldFin™ Anti-Corrosion coating *helps keep your system running like new for years*."

http://www.lg-dfs.com/lg-duct-free-benefits.aspx (last visited September 25, 2012) (emphasis added).

8.    For its PTAC products, LG has made the following (and substantially similar) representations from 2007 to date:

- "At LG Electronics, **quiet is the word for our PTAC units**. Getting a good night's sleep is critical in the hospitality and healthcare industries, and our units are known for providing a quiet experience for your guests or residents. Combined with our optional energy management thermostats, **LG PTACs provide quiet comfort and energy efficient savings in both heat/cool and heat pump models**.";

- "An Easy, Cost-efficient Way to Air Condition Your Rooms

  **Whether heating or cooling, LG PTAC units provide cost-efficient ways to condition the air in your rooms. Additionally, maintenance and service of these units is easy for property owners**. With a wide choice of capacities, and available in both heat/cool and heat pump options, your customers will find just the right application to enhance their space.

  Known for innovation in technology, LG manufactures its own quiet compressors and some components. Additionally, **LG PTACs are protected from corrosive effects of outside air** by the patented Gold Fin™ anti-corrosive treatment process, standard on all models.

  **Our extremely quiet PTAC air conditioners provide excellent performance and innovation in design, and some models are eligible for utility rebates**.";

- "About PTACs

  **LG PTAC units are an economical way to cool and/or heat your rooms. Whether assessing construction costs, maintenance costs, or operating costs, PTACs allow for the flexibility to control energy expenses room-by-room, rather than building-by-building**. If you need service or maintenance, the units easily slide out of the sleeves and can be replaced simply by sliding in a new unit. The dual air filters are front-loaded for easy cleaning, and can be interchanged left or right. LG was among the first manufacturers to include a cross-flow fan for quiet operation, and continues to add innovative improvements to maximize your investment and control your energy use."

4

http://www.lgptac.com/lg-ptac-technology.aspx (last visited September 24, 2012) (emphasis added).

9.     Since 2007, LG has also made the following (and substantially similar) representations that "LG PTAC units are an economical way to cool and/or heat your room. Easy to install, clean and maintain **for years of satisfied use**" and touted "[t]he Benefits of PTACs" as:

- **"Ultra Quiet Operation**
  Ultra-quiet operation is the hallmark of LG's line of PTAC products. Low decibel levels and a soothing tone means the LG PTAC is your best choice for a quiet environment.

- **Stylish**
  LG PTACs have a stylish design. The sleek design adds to the beauty of your surroundings and blends in nicely with your room décor.

- **Wide Choice of Capacities**
  LG offers a range of smart solutions that are quiet, cost efficient, and attractive. Available in a choice of capacities from 7,000 – 15,000 BTUs, in both Heat/Cool and Heat Pump models, with either 208/230V or 265V applications.

- **42" Industry Standard Size**
  Industry standard size makes installation easy and economical, whether for new construction or replacement of existing units.

- **Digital Control Display**
  Standard on all current LG PTAC models. Temperature Display is precise, easy to read and ADA compliant. Auto Changeover from cool to heat is available with the use of an LG wall-mounted thermostat.

- **Gold Fin™ Anti-Corrosion**
  Protects the units from the corrosive effects of outside air and extends the operating life. The patented process is standard on ALL LG PTAC models.

- **Optional Energy Management Thermostats**
  Our optional energy and humidity control thermostats are easily and quickly installed, include digital touch-screen controls, and provide energy management with or without network access control. The dual sensors provide both motion and thermal detection so the PTAC unit is notified when someone is in the room and can adjust the temperature accordingly.

- **Ventilation Filter**
  Polymeric mesh filters allow clean, fresh air into the living space. The filters can be cleaned using mild soap and water, and are suitable for Hospitality, Assisted Living, and Residential applications.

- **Separate Indoor & Outdoor Motors**
  Dual motor configuration allows for the lowest sound rating, while also promoting the highest level of energy efficiency. (208/230V 2.5 & 3.5 kw only)

- **Defrost Control**
  For Heat Pump models only, shuts down the indoor fan to prevent cold air from being blown into the room. Also removes frost from outdoor coil when the outdoor temperature is low.

- **Pressure Control**
  Protects guests from over-heating by shutting down compressor on abnormally high temperature conditions.

- **High Efficiency Rotary Compressor**
  Energy efficient and maintenance-free operation.

- **Emergency Heat**
  Available in Heat Pump models only, bypasses compressor operation and activates the ceramic or coil heater during periods of extreme cold. Promotes high level of guest comfort.

- **Freeze Room Protection**
  Electronic temperature controls constantly monitor and maintain indoor temperature to prevent freezing.

- **Dip Switch Temperature Limits**
  Saves money by controlling the Lowest and Highest temperature settings. By adjusting the dip-switch settings, there are several options on the cooling and heating temperature limits to save on energy usage."

http://www.lgptac.com/lg-ptac-benefits.aspx (last visited September 24, 2012).

10.     LG has marketed its PTAC products to the following groups and industries:

- **"Hospitality**
  With a wide choice of capacities, our extremely quiet PTAC air conditioners provide excellent performance and innovation in design

- **Healthcare**
  For medical office buildings and hospitals. LG Electronics, a leading provider to the healthcare industry, brings visionary modular design ***to improve comfort in problem areas within medical facilities***.

- **Assisted Living**
  Providing a good night's sleep is critical in the assisted living industry. ***Our units are known for providing a quiet, comfortable environment for patients***.

- **Residential / Sunrooms**
  Whether reading a book, entertaining guests, or just admiring the view from your special room, ***LG PTAC units provide a quiet, comfortable, energy-saving environment that maximizes your enjoyment***."

http://www.lgptac.com/lg-ptac-markets.aspx (last visited September 24, 2012) (emphases added).

11.    At all times, in every communication, LG made misrepresentations to and/or uniformly concealed from Plaintiffs and everyone in the chain of distribution the defects in the Affected Products and failed to remove the Affected Products from the marketplace instead of taking remedial action.   LG sold and serviced the Affected Products even though it knew, or was reckless in not knowing, that the Affected Products were defectively designed, would fail prematurely, would likely cause structural damage and foster mold growth, and would ultimately result in Plaintiffs' inability to use their air conditioners for their intended purpose during the time Plaintiffs reasonably expected they would have use of the air conditioners.

12.    The Affected Products have in fact failed prematurely, whether within or outside of the applicable warranty periods.

13.    As a consequence of LG's false and misleading statements and active and ongoing concealment of the defects, Plaintiffs and the Class Members purchased and currently own defective air conditioners and have incurred damages.   Plaintiffs assert claims on behalf of themselves and the Class Members under the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-2, *et seq.* ("CFA"), breach of implied warranties and unjust enrichment.   Plaintiffs seek

actual damages, consequential damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, treble damages, attorneys' fees, costs, prejudgment and post judgment interest, and all other legal and equitable relief available to the Class Members.

14.     LG engages in a pattern and practice of selling defective products, concealing its products' defects, and conspiring with its licensed distributors and sales agents to hide and conceal the defects in the LG products so that its customers will abandon their efforts to have their products repaired or properly serviced.   LG also engages in a continued pattern and practice of requiring its customers to incur costs for labor, parts, and service that will not remedy the defects in the Affected Products.   Instead, LG hopes to delay discovery of the real defects in a calculated effort to push the purchase past the applicable warranty periods.   This action is brought to force LG to pay for its calculated and financially motivated business decisions.

## II.     PARTIES/CLASS MEMBERS

15.     St. Gregory is the oldest private, Christian elementary school in Tyler, Texas and is the city's only U.S. Department of Education Blue Ribbon School, a designation earned by scoring in the top 10 percent of the nation on national standardized tests.   St. Gregory's principal place of business is 500 S. College Avenue, Tyler, Texas.   In June, 2010, St. Gregory purchased twelve (12) LG DFS systems from LG licensed distributor Dixon Hagar Air Conditioning for $52,620 (including parts and labor).   Specifically, St. Gregory purchased two (2) LMU246HV Flex Multi systems and ten (10) LA246HV single zone art cool mirror inverter systems.   The units began to fail and malfunction immediately, and they have continued to fail and malfunction despite St. Gregory's best efforts.   All of these units were defectively designed and/or manufactured, and they each contained defective component parts including, but not limited to, boards and thermistors.

16.     ADK Quarter Moon, LLC, is a North Carolina limited liability company with its principal place of business at 910 Main Street, Chimney Rock, North Carolina. ADK Quarter Moon, LLC, is the owner of the Esmeralda located at 910 Main Street, Chimney Rock, North Carolina. Originally built in 1892 and re-built in 1997, the Esmeralda is located in the Blue Ridge Foothills of Western North Carolina and has served as host to families, honeymooners, and others seeking solitude and the pristine beauty of the Tar Heel state. In or around April 2007, the Esmeralda purchased seven (7) LG outdoor mini-split units LMU240HE and fourteen (14) indoor mini-split units LMN090HE. Since 2007, the units have experienced premature failures of thermistors, sensors, and boards as well as continued leaking and excess condensation from the defective internal insulation despite the Esmeralda's best efforts to repair and maintain them.

17.     Defendant LG Korea is a South Korean company and has its principal place of business at LG Twin Towers, 20 Yeouido-dong, Yeongdeungpo-gu, Seoul 150-721, South Korea. LG Korea wholly owns defendants LG USA. LG Korea manufactures various consumer products including the Affected Products and markets and sells its products in the United States through LG USA and LG USA's network of independent sales agents and distributors. LG Korea utilizes LG Alabama Electronics, Inc. ("LG AL") and others to provide after-market support and service to purchasers of LG goods, including the Affected Products.

18.     Defendant LG USA is incorporated in Delaware and has its principal place of at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. LG USA is the wholly owned United States subsidiary of LG Korea and is the exclusive seller of LG products in the United States.

### III.  JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because: (A) At least one Class Member is a citizen of a state different from one of the Defendants; (B) a Class Member is a citizen of a state and one defendant is a foreign state or a citizen or subject of a foreign state; (C) the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs; and (D) there are more than 100 Class Members.

20.    Now, and at all material times, each of the Defendants regularly conducted business of a substantial and continuous nature in this District.  This Court has personal jurisdiction over each of the Defendants by virtue of their purposeful direction of actions towards this District.  At all times pertinent to this Complaint, these actions were continuous and systematic, directed to this District and, upon information and belief, these continuous and systematic contacts resulted in relationships with Texas residents and the delivery of defective equipment to Texas entities and/or individuals.   In connection with the specific conduct at issue in this Complaint, the non-resident Defendants, upon information and belief, sent equipment into the State of Texas, had telephone calls with the Class Members in Texas, and personally sent or hired representatives to Texas in an effort to fix the problems at issue.

21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because LG USA is subject to personal jurisdiction in the district.

### IV.  FACTUAL BACKGROUND

22.    On information and belief, LG Korea has been engaged in the business of designing, manufacturing, marketing, advertising, selling, warranting, and servicing LG brand appliances in the United States since 2001.  LG USA operates as LG Korea's exclusive seller of LG products in the United States.   LG AL operates as LG Korea's exclusive after-market servicer

of LG products sold in the United States.

23. LG Korea is one of the world's leading manufacturers of air conditioners and other appliances. LG has designed, manufactured, marketed, advertised, sold, and warranted air conditioner product lines, including the Affected Products.

24. LG claims that it "places the utmost priority on consumer safety." LG claims that "[F]rom the design stage to a product's usage and disposal, [it] continuously looks for ways in which to improve product safety to prevent any risk to a consumer's health or property caused by a faulty product." LG claims that "it is continuing to improve process management and quality so that customers can feel more safety with product made by LG Electronics." LG also claims it maintains "Customer Satisfaction" by "always keeping up with which service items customers want most, as it continues to provide the best service possible."[1] According to LG, "Life's Good" when you purchase its products. For purchasers of the Affected Products, life with LG products has been far from good.

## The Defects

25. The Affected Products fail to perform as advertised because they fail to adequately heat and cool as designed. The Affected Products prematurely fail and produce various fault code errors that require repair, and, in certain environments, the Affected Products are not adequately designed to properly handle humidity. They also produce excessive condensation and moisture.

26. The defects leave the Affected Products unusable because they fail to function as designed, manufactured, marketed, and sold.

27. After discovering problems with the units, consumers repeatedly have attempted to have the units repaired by LG, LG distributors, and third-party installers to no avail.

---

[1] (http://www.lg.com/tn_en/about-lg/sustainability/stakeholder-engagement/ customer.jsp) (last visited September 4, 2012).

28.     LG failed to adequately design, manufacture, and/or test the Affected Products to ensure that they were free from defects at the time of sale.   LG further failed to adequately inform customers of the defects once they were known to LG.

29.     At all relevant times, Plaintiffs have used their LG air conditioners in a foreseeable manner and in the manner in which LG intended them to be used.

30.     The defects manifested during the expected useful life of the Affected Products (both within and outside the applicable warranty periods), are substantially likely to prevent the Affected Products from performing their essential function, and make it impossible for Plaintiffs to use the Affected Products as intended.

31.     The customer would not have purchased the Affected Products had the defects been known to them.

32.     The defects rendered the Affected Products unfit for the ordinary purpose for which air conditioners are sold at the time LG sold them to Plaintiffs and the Class Members.

33.     The defects required, and will continue to require, replacement parts and costly repairs to the Affected Products to the extent they can even be made operational.

**Plaintiffs' and Class Members' Reasonable Expectations**

34.     In purchasing the Affected Products, Plaintiffs reasonably and legitimately expected the air conditioners to operate according to their intended purpose.

35.     LG has represented, and Consumers therefore reasonably believed, that the expected useful life of its HVAC products (like the Affected Products) is eighty-four (84) months/seven (7) years.   Consumers do not expect that the air conditioners will be manufactured with inherent and latent defects that results in failure well before their expected lifetime requiring out-of-pocket expenditures to maintain and repair the units.

36.     Customers reasonably expected the Affected Products to effectively heat and cool their properties during the air conditioners' expected useful lives as marketed and represented by LG.

37.     Plaintiffs and the Class Members reasonably expected LG to disclose the existence of any defects that were known to LG at the time of sale, and after the time of sale, that prevented the Affected Products from functioning properly, and to repair or replace the Affected Products with suitable goods.

38.     As a result of the defects alleged herein, Plaintiffs and the Class Members have experienced failure of their air conditioners, did not get what they paid for, and have incurred actual damages for attempting to repair or replace the defective Affected Products.

**LG was Aware of the Defects**

39.     Before it sold the Affected Products, LG knew, or was reckless in not knowing, that the models contained defects that would cause the Affected Products to malfunction and render them incapable of performing their intended functions.

40.     LG did not implement a plan to address the defects.   Instead, LG manufactured and sold later models that contained the same defects.

41.     For some air conditioners that failed within the applicable warranty period, LG suggested repairs to consumers knowing that such repairs would not address the underlying defects and do nothing to prevent later failures.   For other air conditioners, LG routinely and strategically blamed others (e.g., defective installation, poor maintenance, etc.) for problems it knew, or was reckless in not knowing, directly resulted from the design and manufacturing of the Affected Products and refused to make any effort to remedy the problem.   This was part of a common plan and scheme to avoid disclosing or actually remedying the defects in hopes that the

warranty period would expire on purchasers of the Affected Products and leave them with no remedy or recourse.

42.     For the Affected Products that LG made an apparent effort to repair, LG was aware that its repairs would not cure the defects but would instead merely delay inevitable product failures.   In doing so, LG intended to postpone the failures of the air conditioners until after the expiration of the applicable warranties.   For example, LG provided replacement thermistors for Inverter units while knowing that defective boards (a more costly replacement part) were the root cause of the thermistor failures.   For example, for PTAC products, LG knew or should have known in 2007 that the units contained defective boards and later that the units contained fan motors that were undersized and would ultimately burn out.

43.     When Affected Products failed outside the warranty period, LG left the Plaintiffs to incur out-of-pocket expenses to repair or replace components or the Affected Products as a whole.   At times, LG also sold or provided Plaintiffs and the Class Members with defective replacement parts.   Thus, Plaintiffs and the Class Members also incurred additional costs and expenses to replace defective replacement parts supplied by LG that also failed.

44.     Despite knowing that the repairs it recommended would not cure the defects, LG nonetheless convinced its customers to incur the related expenses in a concerted effort to conceal the defects and avoid paying for labor, expensive replacement parts, and other warranted claims in an effort to force its customers to simply give up.

## LG's Omissions and Misrepresentations

45.     LG failed to properly and adequately design, manufacture, and/or test the Affected Products to ensure that they were free from defects.   LG knew or was reckless in not knowing of the defects when it uniformly warranted, advertised, marketed, and sold the Affected Products to

Plaintiffs.

46.     LG did not disclose to its customers the fact that the defects existed at the time of sale and that the defects would render the Affected Products unable to perform their essential function before the end of their expected useful lives.  LG likewise did not disclose that its recommended repairs would do nothing to cure the defects and would only, at best, briefly delay the impact of the defects, thereby postponing failure in the Affected Products.

47.     Instead, in its uniform marketing and advertising, LG falsely represented that the Affected Products were free from defects and that they would perform their essential function.

48.     LG knew that consumers were unaware of the defects and that they reasonably expected the air conditioners to effectively perform their intended function.  LG also knew that customers expected LG to disclose any defects that would prevent the air conditioners from performing that function long before the end of their expected useful lives, and that such disclosure would impact consumers' decisions as to whether to purchase the Affected Products. LG knew and intended for consumers to rely on its material misrepresentations and omissions with regard to the defects when purchasing the Affected Products and in attempting repair efforts.

49.     As a result of LG's uniform misrepresentations and omissions in its marketing and advertising, Plaintiffs were led to believe that the Affected Products would operate without defects, and Plaintiffs purchased LG air conditioners in reliance on that belief.

50.     Unfortunately for consumers, LG's continued representations that the Affected Products were free from defects and would adequately perform as designed and built were not true.  LG knew when it sold the Affected Products that the air conditioners would be adversely affected by the existing defects long before the end of the air conditioners' expected useful lives rendering the air conditioners unable to work properly.

51. LG had the capacity to, and did, systematically deceive consumers into believing that they were purchasing air conditioners that were free from defects and could be used safely and practically to heat and cool their properties.

52. LG actively concealed from and/or failed to disclose to Plaintiffs, the Class Members, and everyone, the true defective nature of the Affected Products, and failed to remove the Affected Products from the marketplace or take adequate remedial action. LG dispatched its representatives and repeatedly represented that the Affected Products were free of defects even though it knew when it sold the air conditioners that they contained a defect that would render the air conditioners unable to perform their intended function. Furthermore, LG sold and serviced the Affected Products even though it knew, or was reckless in not knowing, that the Affected Products were defective and that Plaintiffs and the Class Members would be unable to use the air conditioners for their intended purpose.

53. To this day, LG continues to misrepresent and/or conceal material information from Plaintiffs, the Class Members, and the public about the defects in the Affected Products. When customers complain, report problems, or file warranty claims, LG has failed to disclose the cause of the problems and has claimed that the problems were caused by a myriad of other problems unrelated to their defects. LG's active concealment is part of its common plan and scheme to continue to mislead its customers and to avoid remedying the defects in its products.

**Fraudulent Concealment Allegations**

54. Plaintiffs' claims arise in part from LG's fraudulent concealment of the true defects. To the extent that Plaintiffs' claims arise from LG's fraudulent concealment, there is no one document, communication, or interaction, upon which Plaintiffs base their claims. They allege that at all relevant times, including specifically at the time they purchased their air

conditioners: (1) LG knew, or was reckless in not knowing, of the defects; (2) LG was under a duty to disclose the defects based upon its exclusive knowledge of the defects, its representations about its products, and its concealment of the defects; and (3) LG never disclosed the defects to the Plaintiffs or anyone at any time or place or in any manner, even when directly asked whether the Affected Products contained defects.

55.     Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to LG:

(a)     **Who:** LG concealed the defects from Plaintiffs, the Class Members, and everyone in the chain of distribution.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at LG responsible for such decisions.  Upon information and belief, these individuals include, but are not limited to, employees within LG's "CAC" division/department (e.g., engineers, salesman, technical support, etc.).

(b)     **What:** LG knew at the time it sold the Affected Products, or was reckless in not knowing, that the existing defects in the air conditioners would cause the air conditioners to prematurely fail or otherwise not perform as intended, thereby rendering the Affected Products unable to perform their essential purpose of heating and cooling their properties long before the end of their expected useful lives (within and without outside of the applicable warranty periods).

(c)     **When, Where, and How:** Beginning no later than 2007, LG concealed this material information at all times with respect to the Affected Products, including through the time of sale, on an ongoing basis, and continuing to this day.  LG concealed this material information in every communication it had with Plaintiffs, the Class Members,

and everyone in the chain of distribution and after-market service. Plaintiffs are aware of no document, communication, or other place or thing, in which LG disclosed this material information to anyone outside of LG or LG's distribution chain. Such information does not appear in any sales documents, displays, advertisements, warranties, owner's manual, or on LG's website that can be accessed by the general public. When customers complain, report problems, or file warranty claims, LG has failed to disclose the cause of the problems and has misrepresented that the problems were caused by a myriad of other problems unrelated to the air conditioner's defects. LG's active concealment is part of its common plan and scheme to continue to mislead its customers and to avoid remedying the defects in its products.

(i) Regarding the inverter units, in December, 2010, LG directed its distributors to "quarantine" units that had not yet been sold to customers such as Plaintiffs, but specifically instructed them not to do anything to the units already in the field. In December, 2010, LG issued a service bulletin regarding problems with its Inverter products; however, LG did not disclose this bulletin to the general public, and it was not mailed or otherwise directly provided to LG's customers. It also did not disclose the full extent and nature of the defects with the products. This bulletin was a further effort to mislead its customers and suppress the true nature of the defects. This is but one example.

(ii) Regarding the PTAC products, LG issued a series of service bulletins (dated December, 2007, June, 2009, and April, 2011) admitting that its PTAC units contained defective boards, fan motors, coils, and/or compressors. However, LG hid these bulletins from the general public and did not mail or

otherwise directly provide them to LG's customers. Although LG agreed to extend its warranty on the PTAC products for some of these defects, LG refused to pay expenses for past labor and materials incurred by its customers in an effort to remedy the defects. LG has further failed to abide by its promise to remedy the problems and has instead continued to stall and delay repairs. Again, these are merely examples.

(d)     **Why:** LG concealed this material information for the purpose of inducing Plaintiffs and the Class Members to purchase the Affected Products at full price rather than purchasing competitors' air conditioners or paying LG less for the Affected Products. Had LG disclosed the truth, neither Plaintiffs nor the Class Members would have bought the Affected Products, or, at a minimum, would have paid less for them. Further, Plaintiffs would not have engaged in futile efforts to attempt to repair the defective air conditioners, including paying for labor and parts that would not remedy the defects that were known or should have been known to LG before they were sold and incurring other consequential damages.

**V.      NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS'S STATE LAW CLAIMS.**

56.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiffs and all the Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

57.     The application of New Jersey's laws to each of the claims alleged by the Class

Members is also appropriate under Texas's choice of law rules. In particular, New Jersey law applies to the CFA claim under the most significant relationship test, and New Jersey law applies to the remaining claims under either the most significant relationship test or the governmental interest test.

58.     New Jersey has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all the Class Members.

59.     New Jersey has a materially greater interest than any other State in enforcing its laws with respect to the conduct of corporations, like LG, located in and doing business principally in New Jersey. The application of New Jersey law to the conduct of corporations based in New Jersey furthers strong fundamental public policies of the State of New Jersey.

60.     Specifically, New Jersey's interest in this case and in regulating conduct under its laws arise from, among other things, the following:

(a)     LG USA's headquarters and principal place of business are located in New Jersey;

(b)     LG owns property and conducts substantial business in New Jersey;

(c)     Upon information and belief, LG pays corporate income taxes to the State of New Jersey, giving New Jersey an interest (among other interests) in potential judgments affecting its revenue;

(d)     LG receives in New Jersey the revenues generated by the sale of the Affected Products;

(e)     New Jersey has an interest in deterring unlawful conduct on the part of its resident corporations;

(f)     The justified expectations of the parties would be best served by applying

New Jersey law since LG USA is based in New Jersey; and

(g)     Some Class Members reside and/or purchased Affected Products in New Jersey; and

(h)     New Jersey is the State from which LG's misconduct emanated and continues to emanate.   Upon information and belief, LG became aware of the Affected Products' defects in its nondisclosure scheme was also orchestrated from its headquarters in New Jersey.   LG's marketing efforts relating to the Affected Products were created and orchestrated from its headquarters in New Jersey. LG also disseminated from its New Jersey headquarters the marketing materials which related to the Affected Products.

## VI.     TOLLING

61.     **Discovery Rule:**   The causes of action alleged herein accrued upon discovery of the defective nature of the Affected Products. Because the defects are latent, and LG took steps to actively misrepresent and conceal it, among other reasons, Plaintiffs and the Class Members did not discover and could not have discovered the defects through reasonable and diligent investigation. Moreover, reasonable and diligent investigation into the cause of the malfunctioning air conditioners did not and could not reveal a factual basis for a cause of action based on LG's misrepresentation and concealment of the defects, particularly when asked direct questions by its customers whether the Affected Products, or component parts thereof, were faulty or defective.

62.     **Fraudulent Concealment Tolling:**   Any applicable statutes of limitation have been tolled by LG's knowing, active, and ongoing misrepresentation, concealment, and denial of the facts as alleged herein.   Plaintiffs and the Class Members have been kept ignorant by LG of vital information essential to the pursuit of these claims, without any fault or lack of diligence on

their part. Plaintiff and the Class Members could not reasonably have discovered the true, latently defective nature of the Affected Products.

63. **Estoppel:** LG was and is under a continuous duty to disclose to the Plaintiffs and the Class Members the true character, quality, and nature of the Affected Products. LG knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Affected Products, which concealment is ongoing. Plaintiffs and the Class Members reasonably relied upon LG's knowing, affirmative, and/or active, and ongoing concealment. Based on the foregoing, LG is estopped from relying on any statutes of limitation in defense of this action.

## VII.    CLASS ACTION ALLEGATIONS

64. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

65. The Class that Plaintiffs seek to represent is defined as follows:

> All persons or entities who are citizens of and/or are legally residing in the United States who have purchased or own or have owned any LG air conditioner since 2007 including, but not limited to, Inverter products (e.g., Inverter CST_ FST, Inverter Split, Flex Multi, Multi V, DFS systems), PTAC products, and other LG air conditioner models.

Excluded from the Class are (a) LG and any entity in which LG has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors, (b) the United States government and any agency or instrumentality thereof; (c) the judge to whom this case is assigned and any member of the judge's immediate family; (d) claims for personal injury, wrongful death, and/or emotional distress; (e) any person or entity who is currently in bankruptcy; (f) any person currently in litigation with LG including, but not limited to, Cottage Builders, Inc. and any affiliated entity or person who owns an interest in Cottage Builders, Inc.

66. **Numerosity/Impracticability of Joinder:** The Class Members are so numerous

that joinder of all Class Members would be impracticable. The Class includes tens of thousands of Class Members. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased or owned Affected Products. The precise number of Class Members can be ascertained by reviewing documents in LG's sole possession, custody, and control.

67. **Commonality and Predominance:** There are common questions of law and fact that predominate over any questions affecting only individual Class Members. These common legal and factual questions, include, but are not limited to, the following:

(a) Whether the Affected Products contain common design and/or manufacturing defects;

(b) Whether the Affected Products are substantially certain to prematurely fail;

(c) Whether the Affected Products are not of merchantable quality;

(d) Whether the existence of the defects in the Affected Products is a material fact reasonable purchasers would have considered in deciding whether to purchase an air conditioner;

(e) Whether LG knew and/or was reckless in not knowing of the defects in the Affected Products;

(f) Whether LG engaged in a pattern of fraudulent, deceptive, and misleading conduct involving the marketing and sale of the Affected Products;

(g) Whether LG consciously concealed or failed to disclose material facts to Plaintiffs and other Class Members with respect to the defects in the Affected Products;

(h) Whether LG knew that consumers were unaware of the defects and that they expected the air conditioners to be free from defects at the time of sale;

(i)     Whether LG knew that consumers would expect their air conditioners to effectively heat and cool Plaintiffs' Class Members' properties;

(j)     Whether LG knew that customers would expect it to disclose the existence of known defects that would prevent the air conditioners from properly functioning, and that such disclosure would impact consumers' decision as to whether to purchase the Affected Products;

(k)     Whether LG intended that Plaintiffs and the other Class Members rely on its acts of concealment and omissions when purchasing the Affected Products;

(l)     Whether as a result of the foregoing acts, omissions, and practices, Plaintiffs and the Class Members have suffered an ascertainable loss by purchasing defective air conditioners that are unable to perform their essential function, require additional expenditures in order to reach their expected useful life, if ever, and that present a risk to the safety of Plaintiffs and Class Members in the form of risk of fire and/or mold.

(m)     Whether LG's false and misleading statements of facts and concealment of material facts regarding the defect in the Affected Products were likely to deceive the public;

(n)     Whether LG's acts and omissions violated the New Jersey CFA;

(o)     Whether LG fraudulently concealed from and/or failed to disclose to Plaintiffs and the Class Members the defects in the Affected Products;

(p)     Whether LG's conduct breached implied and expressed warranties;

(q)     Whether LG's warranties failed of their essential purpose;

(r)     Whether LG has been unjustly enriched at the expense of Plaintiffs and Class Members;

(s)     Whether Plaintiffs and Class Members suffered any ascertainable loss of money or property as a result of the false promise or misrepresentation, or concealment, suppression or omission of material fact;

(t)     Whether LG should be declared financially responsible for notifying all Class Members of the defective Affected Products and for the costs and expenses of repair and replacement of all such defective components therein;

(u)     Whether Plaintiffs and Class Members are entitled to recover compensatory and consequential damages, including refunds, punitive damages, treble damages, interest, attorneys' fees, filing fees, and reasonable costs of suit in connection with LG's unlawful conduct as alleged herein;

(v)     Whether, as a result of LG's misconduct, Plaintiffs and the Class Members are entitled to equitable relief and other relief and, if so, the nature of such relief;

(w)     Whether New Jersey law can be applied to the claims of Plaintiffs and the Class Members; and

(x)     Whether the actions of LG were willful and malicious, or manifested knowing and reckless indifference and disregard toward the rights of Plaintiffs and the Class Members.

68.     **Typicality:**  Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have each been injured by the same wrongful practices by LG. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal and remedial theories.

69.     **Adequacy:**  Plaintiffs will fairly and adequately protect the interests of the Class Members because Plaintiffs' interests are coincident with, and not antagonistic to, those of the

Class Members.   Plaintiffs retained counsel with experience in the prosecution of matters relating to the conduct at issue, in addition to substantial experience in handling complex litigation, class actions and product liability litigation.   Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the Class Members.

70.   **Superiority:**   Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.   Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail.   While the aggregate damages sustained by the Class Members are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class Member resulting from LG's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting their own separate claims is remote, and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.   In addition, LG has acted, or refused to act, on grounds generally applicable to the Class Members and, as such, final injunctive relief or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

71.   Defendants have acted on grounds generally applicable to the entire Class, thereby

making final relief appropriate with respect to the Class as a whole. As discussed in more detail below, Defendants have collectively acted in a manner that impacted all of the Class Members in an identical manner. Prosecution of separate actions by individual Class Members would create the risk of inconsistent and varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants.

## VIII.   LEGAL CLAIMS

### COUNT ONE
### NEW JERSEY CONSUMER FRAUD ACT
### (against LG Korea and LG USA)

72.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

73.    Plaintiffs and other Class Members are "consumers" within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 *et seq*. (the "CFA").

74.    The Affected Products are "goods" within the meaning of the CFA.

75.    At all relevant times material hereto, LG conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

76.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

77.    LG has engaged in deceptive, unconscionable, unfair, fraudulent, and misleading commercial practices in the marketing and sale of air conditioners it knew or should have known were defective.

78.    LG had exclusive knowledge of the defects at the time of sale. The defects are latent and not something that Plaintiffs or Class Members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

79.     LG represented that its goods, merchandise, or services had characteristics, uses, benefits, or qualities that they did not have, and that its goods, merchandise, and services were of a particular standard, quality, or grade that they were not.

80.     In its marketing and sale of the Affected Products, LG undertook active and ongoing steps to conceal the defects and has consciously withheld material facts from Plaintiffs and the Class Members with respect to the defects in the Affected Products. Plaintiffs are aware of nothing in LG's advertising, publicity, or marketing materials that discloses the truth about the defects, despite LG's awareness of the problem.

81.     LG's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that defects in the Affected Products would prevent the air conditioners from functioning as designed and render the air conditioners unable to perform their essential purpose of heating and cooling was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase and that would influence reasonable consumers' choice of action during the purchase of their air conditioners.

82.     LG intended that Plaintiffs and the Class Members rely on its acts of concealment and omissions, so that Plaintiffs and other Class Members would purchase the Affected Products at full price rather than paying less for them or purchasing competitors' air conditioners.

83.     Plaintiffs and the Class Members purchased the Affected Products in the wake of LG's knowing concealment and omissions.

84.     Had LG disclosed all material information regarding the defect to Plaintiffs and the Class Members, they may not have purchased the Affected Products, or, at a minimum, they would have paid less for the Affected Products.

85.     LG's general course of conduct had an impact on the public interest because the

acts were part of a generalized course of deceptive conduct affecting numerous consumers.

86.     As a result of the foregoing acts, omissions, and practices, Plaintiffs and the Class Members have suffered an ascertainable loss by purchasing defective air conditioners that are unable to perform their essential function of heating and cooling their properties for the expected useful life and that present a risk to the safety of Plaintiffs and the Class Members in the form of risk of fire hazards and/or mold and mildew.   Plaintiffs and the Class Members may have also incurred additional costs to replace and/or repair the Affected Products. Plaintiffs and the Class Members are entitled to recover such damages, together with appropriate penalties, including compensatory damages, consequential damages, punitive damages, treble damages, attorneys' fees, and costs of suit.

87.     Application of the CFA to all Class Members, regardless of their state of residence, is appropriate as described herein and because, *inter alia:*

(a)     LG USA controlled and directed its nationwide sales operations and support operations from LG USA's headquarters in New Jersey;

(b)     LG USA's marketing and customer support operations and decisions were made in New Jersey, LG USA's headquarters;

(c)     LG USA's principal place of business is located in New Jersey;

(d)     A significant percentage of LG USA's key employees are based in New Jersey; and

(e)     The facts and circumstances of this case reflect numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to the Defendants, thereby making application of New Jersey law to the entire Class appropriate.

WHEREFORE, premises considered, Plaintiffs and the Class Members seek the following

relief under Count One of the Complaint:

1.      Refund of the purchase price of all of the Affected Products purchased by the Class Members;

2.      Treble Damages;

3.      Reasonable attorneys' fees, filing fees, and reasonable costs of suit;

4.      Prejudgment and Post judgment Interest; and

5.      Such other just and equitable relief as the Court deems proper.

**COUNT TWO**
**BREACH OF IMPLIED WARRANTIES**
**(against LG Korea and LG USA)**

88.      Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

89.      At all times relevant herein, LG Korea and LG USA were and are in the business of manufacturing and selling air conditioners.

90.      LG Korea and LG USA have brought themselves into privity with Plaintiffs and the Class Members by selling and/or warranting the Affected Products to them directly and/or through the agency doctrine.

91.      At all times relevant herein, LG impliedly warranted in a uniform manner to Plaintiffs and the proposed Class Members that the Affected Products were of the same or greater quality as generally accepted for air conditioners and were safe and fit for their intended use as air conditioners.

92.      Contrary to LG's implied warranties, the Affected Products were not of merchantable quality at the time of sale, as they were not fit for the ordinary purposes for which such goods are used and/or do not conform to the promises or affirmations of fact made in the promotional literature. The Affected Products contained inherent, latent defects at the time of sale

30

that were substantially certain to result in malfunction during the useful life of the product such that the air conditioners would not perform their essential function.

93.    LG was aware of these defects, but sold the Affected Products without disclosing the defects to Plaintiffs and the Class Members.

94.    When LG marketed and sold the Affected Products for use by Plaintiffs and the Class Members, LG had actual or constructive knowledge of the particular purposes for which the Affected Products would be used.

95.    When LG marketed and sold the Affected Products for use by Plaintiff and the Class Members, LG had actual or constructive knowledge that Plaintiffs and the Class Members would and did rely upon the skill and judgment of LG to select and furnish air conditioners that were suitable for residential and non-residential use.

96.    Contrary to LG's implied warranty, the Affected Products were not fit for their intended and known use by Plaintiff and the Class Members. The Affected Products contain inherent defects which are substantially certain to result in malfunction during their useful life.

97.    LG was aware of the defects in the Affected Products and did not act on that knowledge. LG continued to actively conceal from customers that the air conditioners they purchased were defective at the time of sale.

98.    Had the defects that existed at the time of sale been known, the Affected Products could not have been sold or could not have been sold at the same price.

99.    Had Plaintiffs or the Class Members been aware of the defects that existed at the time of sale, they would not have purchased the Affected Products (or would have paid less for them).

100.    LG has received timely notice of the breach of implied warranties alleged herein.

31

LG has been put on notice by the Class Members as a whole by reason of its knowledge of the defects, and by warranty claims and other complaints made by Plaintiffs, the Class Members, distributors, sales representatives, and contractors.

101.     Any express limitation or negation of LG's implied warranties that the Affected Products were fit to perform their essential purpose, when such was not the case, would be unreasonable, unconscionable, and fraudulent. Accordingly, any such limitation is unenforceable. Further, any express limitation of negation of LG's implied warranties is unenforceable because such warranties failed on their essential purpose when LG did not timely remedy the defects in the Affected Products.

102.     As a direct and legal result of the breach of implied warranties by LG, Plaintiffs and the Class Members sustained actual and consequential damages in an amount to be determined according to proof at time of trial.

WHEREFORE, premises considered, Plaintiffs and the Class Members seek the following relief under Count Two of the Complaint:

1.     Rescission of the purchase and return of the purchase price;

2.     Consequential Damages;

3.     Prejudgment and Post judgment Interest; and

4.     Such other just and equitable relief as the Court deems proper.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(against LG Korea and LG USA)**

103.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

104.     LG has been unjustly enriched by the sale of the Affected Products to Plaintiffs and

the Class Members.

105.     Plaintiffs seek to recover for LG's unjust enrichment under New Jersey State law.

106.     Plaintiffs and the Class Members conferred a benefit on LG, but LG failed to disclose its knowledge that Plaintiffs did not receive what they paid for and misled Plaintiffs and the Class Members regarding the qualities of the Affected Products while profiting from this deception.

107.     The circumstances are such that it would be inequitable, unconscionable, and unjust to permit LG to retain the benefit of these profits that it unfairly has obtained from Plaintiffs and the Class Members.

108.     Plaintiffs and the Class Members, having been injured by LG's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of LG to their detriment.

WHEREFORE, premises considered, Plaintiffs and the Class Members seek the following relief under Count One of the Complaint:

1.      Restitution and disgorgement of profits;

2.      Prejudgment and Post judgment Interest;

3.      Such other just and equitable relief as the Court deems proper.

## PRAYER FOR RELIEF

Plaintiffs on behalf of themselves and the Class Members, pray for judgment against LG Korea and LG USA, jointly and severally, granting the following relief:

1.      An order certifying this case as a class action and appointing Plaintiffs to represent the Class Members and Plaintiffs' counsel as Class counsel;

2.      Restitution and disgorgement of all amounts obtained by LG as a result of its

misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.      All recoverable compensatory and other consequential damages sustained by Plaintiffs and the Class Members;

4.      Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class Members in the maximum amount permitted by applicable law, including mandatory treble damages pursuant to the New Jersey Consumer Fraud Act;

5.      An order (a) requiring LG to immediately cease its wrongful conduct as set forth above; (b) enjoining LG from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (c) requiring LG to refund to Plaintiffs and all Class Members the funds necessary to repair or replace the Affected Products as appropriate;

6.      Statutory prejudgment and post judgment interest on the class damages;

7.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.      Such other relief as the Court may deem just and proper.


**JURY DEMAND**

Plaintiffs and the Class Members demand a trial by struck jury.

Dated: October 4, 2012                    Respectfully submitted,

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt
State Bar No.   00787165
Robert M. Parker
State Bar No. 15498000
Charles Ainsworth
State Bar No. 00783521
Andrew T. Gorham
State Bar No. 24012715
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone:   (903) 531-3535
Facsimile:   (903) 533-9687
E-mail: rcbunt@pbatyler.com
E-mail: rmparker@pbatyler.com
E-mail: charley@pbatyler.com
E-mail: tgorham@pbatyler.com


J. Russell Campbell
Gregory C. Cook
Charles A. Burkhart
Sean W. Shirley
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798
E-mail:   rcampbell@balch.com
E-mail:   gcook@balch.com
E-mail:   cburkhart@balch.com
E-mail:   sshirley@balch.com


**COUNSEL FOR PLAINTIFFS**
**St. Gregory Cathedral School and**
**ADK Quarter Moon, LLC, on behalf**
**of themselves and all others similarly**
**situated**