IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ST. GREGORY CATHEDRAL SCHOOL; ADK QUARTER MOON, LLC; LEXMI HOSPITALITY, LLC; and SHRI BALAJI, LLC on behalf of themselves and all others similarly situated, | : : : : : : | |
| Plaintiffs, | : | Case No. 6:12-CV-739 |
| v. | : : | |
| LG ELECTRONICS, INC., a South Korean corporation, and LG ELECTRONICS U.S.A., INC., a Delaware corporation, | : : : : | |
| Defendants. | : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Phoebe A. Wilkinson *(admitted pro hac vice)*
Michael S. Davi
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
Phone: 212-408-5100
Facsimile: 212-541-5369

*COUNSEL FOR DEFENDANTS*
*LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A., INC.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................. 4

APPLICABLE LEGAL STANDARDS ............................................................ 6

ARGUMENT ..................................................................................................... 6

    I.     A CHOICE OF LAW ANALYSIS MUST BE APPLIED TO PLAINTIFFS'
          STATE LAW CLAIMS ...................................................................... 6

        A.    None of the Plaintiffs Can Invoke the New Jersey Consumer Fraud Act to Pursue
            Their Consumer Fraud-Based Claims ................................................................ 7

              **(1)**   **Under Texas Conflict Rules, Texas Law Governs St. Gregory's
                     Fraud Claim, and North Carolina Law Governs The Fraud
                     Claims Asserted By the Three North Carolina Plaintiffs**.....................7

              **(2)**   **The Result Would Be The Same In New Jersey; The New
                     Jersey Consumer Fraud Act Does Not Govern Plaintiffs' Out-
                     of-State Transactions** ...........................................................11

    II.    EVEN IF PLAINTIFFS CAN PURSUE A CONSUMER FRAUD CLAIM UNDER THE
          NEW JERSEY STATUTE, THEY HAVE FAILED TO STATE A CLAIM UPON
          WHICH RELIEF CAN BE GRANTED ........................................... 13

        A.    Plaintiffs Have Not Identified Any Actionable "Misrepresentation" ................... 13

              **(1)**   **The Claimed "Misrepresentations" Are Non-Actionable Sales
                     Puffery Because They Do Nothing More Than Tout The
                     Superiority of Defendants' Products and Make Unverifiable,
                     Subjective Claims** ...............................................................14

                   a)   Statements That Brag About Product Superiority,  Excellent
                       Performance, and Quality Are Not Actionable .................................. 14

                   b)   Statements About Future Expectations, Subjective Cost Effectiveness
                       and "A Good Night's Sleep" Are Sales Puffery ............................... 16

               **(2)**   **The Purported "Misrepresentations" Are Too General and
                     Lack Sufficient Precision To Meet Rule 9(b)'s Heightened
                     Pleading Standard** ...............................................................17

               **(3)**   **Plaintiffs Have Failed To Plead An "Ascertainable Loss"** ...................20

               **(4)**   **Plaintiffs Have Failed To Plead Any Causal Nexus Between
                     Defendants' Alleged Conduct And Plaintiffs' Purported
                     Damages** ...........................................................................22

         B.    Plaintiffs' Fraud-Based Omission Theory Fails To State A Claim ..................... 23

    III.   PLAINTIFFS HAVE FAILED TO STATE AN EXPRESS WARRANTY CLAIM,
          IRRESPECTIVE OF WHICH STATE'S LAW APPLIES ............................................. 24

i

A.      In the Event of A Conflict, The Law of Each Plaintiff's Home State Governs The Express Warranty Claims ................................................................. 24

B.      Plaintiffs Do Not State An Express Warranty Claim Under The Plain Terms of LG's Warranty ......................................................................... 24

C.      Plaintiffs' Express Warranty Claims Suffer From Additional Fatal Defects ....... 26
        **(1)     Plaintiffs' Claims Fail For Lack of Pre-Suit Notice**.............................26
        **(2)     ADK's Express Warranty Claim is Time-Barred**................................27

IV.     PLAINTIFFS' IMPLIED WARRANTY CLAIMS WERE DISCLAIMED, AND MUST BE DISMISSED ................................................................................ 28
        **(1)     ADK's Implied Warranty Claim is Time-Barred**................................29

V.      PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A SUBSTITUTE FOR THE DEFECTIVE WARRANTY CLAIMS AND SHOULD BE DISMISSED............. 29

A.      As Was the Case With The Consumer Fraud Claims, Plaintiff's Unjust Enrichment Claims Fail Due to Lack Of Sufficient Particularity......................... 30

B.      Plaintiffs Cannot Recover in Quasi-Contract Because They  Acknowledge Valid Contracts That Govern the Parties' Relationship................................................. 30

VI.     PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED .......................................... 32

A.      Plaintiffs Fail to Allege the Existence of a RICO Enterprise. ............................. 33

B.      Plaintiffs Fail to Allege Predicate Acts of Racketeering. .................................... 36

C.      Plaintiffs Fail to Allege That Their Purported Injuries  Were Directly or Proximately Caused by LG's Representations ..................................................... 40

D.      Plaintiffs' RICO Conspiracy Claim Fails  In the Absence of an Actionable RICO Claim.................................................................................................................... 42

E.      Plaintiffs' Requested Equitable  Relief Is Not Permitted in a Civil RICO Suit ... 42

F.      Plaintiff ADK's RICO Claims Are Barred by the Statute of Limitations ............ 44

VII.    NO FURTHER LEAVE TO AMEND SHOULD BE GRANTED .................................. 45

CONCLUSION...................................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

ABC Arbitrage Plaintiffs Grp. v. Tchuruk,
    291 F.3d 336 (5th Cir. 2002) ........................................................................18, 40

Alban v. BMW of N. Am.,
    Civ. No. 09–5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011) .........................................18, 23

Alban v. BMW of N. Am., LLC,
    2010 WL 3636253 (D.N.J. Sept. 2010) ................................................................23

Allen v. Roberts Const. Co., Inc.,
    532 S.E.2d 534 (N.C. App. 2000) ......................................................................26

Am. Dental Assoc. v. Cigna Corp.,
    605 F.3d 1283 (11th Cir. 2010) ........................................................................38

Am. United Life Ins. Co. v. Martinez,
    480 F.3d 1043 (11th Cir. 2004) ........................................................................39

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006) ....................................................................................41

Arcand v. Brother Intern. Corp.,
    673 F. Supp. 2d 282 (D.N.J. 2009) ................................................................22, 23

Arlandson v. Hartz Mountain Corp.,
    792 F. Supp. 2d 691 (D.N.J. 2011) .....................................................................11

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .....................................................................................6

Baker v. Deutsche Bank Nat'l Trust Co.,
    No. 4:11-CV-61, 2011 WL 5600312 (E.D. Tex. Oct. 20, 2011) .........................................31

Beavers v. Metro. Life. Ins. Co.,
    566 F.3d 436 (5th Cir. 2009) .............................................................................6

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .....................................................................................6

Benchmark Elecs., Inc. v. J.M. Huber Corp.,
    343 F.3d 719 (5th Cir. 2003) ............................................................................10

Bernick v. Jurden,
    293 S.E.2d 405 (N.C. 1982) .............................................................................27

Bolin v. Sears Roebuck & Co.,
    231 F.3d 970 (5th Cir. 2000) ............................................................43

Boulmay v. Rampart 920, Inc.,
    124 F. App'x 889 (5th Cir. 2005) .....................................................44

Bradley v. Phillips Petroleum Co.,
    527 F. Supp. 2d 625 (S.D. Tex. 2007) ..............................................45

Bridge v. Phoenix Bond & Indem. Co.,
    553 U.S. 639 (2008)..........................................................................41

Brown & Brown of Texas, Inc. v. Omni Metals, Inc.,
    317 S.W.3d 361 (Tex. App. 2010).......................................................8

Brunig v. Clark,
    560 F.3d 292 (5th Cir. 2009) ............................................................32

Bullock v. Abbott & Ross Credit Servs., LLC,
    2009 U.S. Dist. LEXIS 112265 (W.D. Tex. Dec. 3, 2009) ...............43

Bumpers v. Cmty. Bank of N. Va.,
    718 S.E.2d 408 (N.C. Ct. App. 2011) .................................................8

Busse v. Homebank, LLC,
    No. 07-3495, 2008 WL 2357865 (D.N.J. June 5, 2008)....................18

Campmor, Inc. v. Brulant, LLC,
    2011 U.S. Dist. LEXIS 74861 (D.N.J. July 12, 2011)......................17

Carrol v. Fort James Corp.,
    470 F.3d 1171 (5th Cir. 2006) ..........................................................39

Cate v. Dover Corp.,
    790 S.W.2d 559 (Tex. 1990).............................................................28

Cetel v. Commw. Life Ins. Co.,
    460 F.3d 494 (3d Cir. 2006)........................................................32, 44

Coghlan v. Wellcraft Marine Corp.,
    240 F.3d 449 (5th Cir. 2001) ............................................................31

Compaq Computer Corp. v. Lapray,
    135 S.W.3d 657 (Tex. 2004).............................................................24

Dare Invs., LLC v. Chicago Title Ins. Co.,
    No. 10-6088 (DRD), 2011 WL 2600594 (D.N.J. June 29, 2011)...........32

Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.,
    515 F. Supp. 2d. 760 (S.D. Tex. 2007) ..................................................................8

DeShazo v. Nations Energy Co.,
    286 F. App'x 110 (5th Cir. 2008) .......................................................................44

Discon, Inc. v. NYNEX Corp.,
    93 F.3d 1055 (2d Cir.1996), rev'd on other grounds, 525 U.S. 128 (1998) ..........................33

Erie R. Co. v. Tompkins,
    304 U.S. 64 (1938)...........................................................................................6

Estate of Gleiberman v. Hartford Life Ins. Co.,
    94 F. App'x 944 (3d Cir. 2004) ..........................................................................31

Fagan Holdings, Inc. v. Thinkware, Inc.,
    750 F. Supp. 2d 820 (S.D. Tex. 2010) ................................................................10

First Union Nat'l Bank v. Richmont Capital Partners I, L.P.,
    168 S.W.3d 917 (Tex. App. 2005).......................................................................30

Fitzgerald v. Chrysler Corp.,
    116 F.3d 225 (7th Cir. 1997) .............................................................................35

Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,
    565 F.3d 200 (5th Cir. 2009) ...............................................................................6

Foman v. Davis,
    371 U.S. 178, 83 S.Ct 227 (1962)......................................................................45

Glass v. BMW of N. Am., LLC,
    2011 WL 6887721 (D.N.J. Dec. 29, 2011)......................................................16, 22

Graddy v. Deutsche Bank,
    No. 11-3038, 2013 WL 1222655 (D.N.J. March 25, 2013)....................................20

Hart v. Bayer Corp.,
    199 F.3d 239 (5th Cir. 2000) .............................................................................18

Highland Crusader Offshore Partners, L.P. v. Motient Corp.,
    281 S.W.3d 237 (Tex. App. 2009)........................................................................9

Hilton v. Atlas Roofing Corp. of Miss.,
    2006 WL 1581239 (E.D. La. May 18, 2006)........................................................25

Hitch Enters., Inc. v. Cimarex Energy Co.,
    859 F. Supp. 2d 1249 (W.D. Okla. 2012 ) ...........................................................42

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992)..........................................................................................40, 41

Hughes v. Panasonic Consumer Elecs. Co.,
    2011 WL 2976839 (D.N.J. July 21, 2011)......................................................15, 18

Hunt Constr. Group, Inc. v. Hun School of Princeton,
    2009 U.S. Dist. LEXIS 39687 (D.N.J. May 11, 2009) ...........................................17

In re All Terrain Vehicle Litig.,
    978 F.2d 1265, 1992 WL 332105 (9th Cir. Nov. 10, 1992), aff'd in part, 979 F.2d 755
    (9th Cir. 1992)...............................................................................................39, 40

In re Burzynski,
    989 F.2d 733 (5th Cir. 1993) ................................................................................37

In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II),
    2008 WL 4126264 (D.N.J. Sept. 02, 2008) ...........................................................15

In re Fredeman Litig.,
    843 F.2d 821 (5th Cir. 1988) ................................................................................43

In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,
    834 F. Supp. 2d 566 (S.D. Tex. 2011) ..................................................................14

In re Ins. Brokerage Antitrust Litig.,
    618 F.3d 300 (3d Cir. 2010).................................................................................19

In re MasterCard Int'l Inc.,
    313 F.3d 257 (5th Cir. 2002) ...............................................................................38

In re Taxable Mun. Bond Sec. Litig.,
    51 F.3d 518 (5th Cir. 1995) .................................................................................41

In re Toshiba Am. HP DVD Mktg. & Sales Practices Litig.,
    2009 WL 2940081 (D.N.J. Sept. 11, 2009) .............................................14, 15, 16

Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,
    929 A.2d 1076 (N.J. 2007)..............................................................................8, 21

ISystems v. Spark Networks, Ltd.,
    No. 10-10905, 2012 WL 3101672 (5th Cir. Mar. 21, 2012).................................34

Joe N. Pratt Ins. v. Doane,
    2008 WL 819011 (S.D. Tex. Mar. 20, 2008).........................................................37

Khurana v. Innovative Health Care Sys.,
130 F.3d 143 (5th Cir. 1997), vacated on other grounds by Teel v. Khurana, 525 U.S.
494 (1998) ........................................................................................................34

Klaxon Co v. Stentor Elec. Mfg. Co.,
313 U.S. 487 (1941) ...............................................................................................6

Lee v. Karriker,
No. 6:08cv328, 2009 WL 2590093 (E.D. Tex. 2009) .............................................44

Lum v. Bank of Am.,
361 F.3d 217 (3d Cir. 2004) ....................................................................................19

Maniscalco v. Brother Int'l (USA) Corp.,
709 F.3d 202 (3d Cir. 2013) ...............................................................................11, 12

Mason v. Coca-Cola Co.,
774 F. Supp. 2d 699 (D.N.J. 2011) .........................................................................18

Maybank v. S. S. Kresge Co.,
273 S.E.2d 681 (N.C. 1981) ....................................................................................26

Modern Ice Equip. & Supply Co. v. Snow Park USA, LLC,
No. 3:10-CV-134, 2011 WL 3515862 (W.D.N.C. Aug. 11, 2011) .........................31

Montich v. Miele USA, Inc.,
849 F.Supp.2d 439 (D.N.J. 2012) ...........................................................................11

Moulton v. LG,
2012 U.S. Dist. LEXIS 117931 ..............................................................................29

Muttathottil v. Mansfield,
381 F. App'x 454 (5th Cir. 2010) ............................................................................45

N.J. Citizen Action v. Schering-Plough Corp.,
842 A.2d 174 (N.J. App. Div. 2003) ........................................................................13

North Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare,
Civ. A. No. 4:09-cv-2556, 2011 WL 5325785 (S.D. Tex. Nov. 3, 2011) ...............34

P.V. ex rel. T.V. v. Camp Jaycee,
962 A.2d 453 (N.J. 2008) ........................................................................................11

Parker v. Howmedica Osteonics Corp.,
2008 WL 141628 (D.N.J. Jan. 14, 2008) ................................................................21

Paul v. Aviva Life & Annuity Co.,
   2011 WL 2713649 (N.D. Tex. July 12, 2011), aff'd, 487 F. App'x 924 (5th Cir. 2012)...........
   ...........................................................................................................................................38, 42

Payne v. FujiFilm U.S.A., Inc.,
   Civ. No. 07-385, 2010 WL 2342388 (D.N.J. May 28, 2010) .................................................11

Pecan Valley Nut Co. v. E.I. du Pont de Nemours & Co.,
   15 SW.3d 244 (Tex. App. 2000)............................................................................................27

Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,
   233 F.R.D. 143 (D. Del. 2005) ..............................................................................................34

RBC Bank (USA) v. Petrozzini,
   No. 12-155, 2012 WL 1965370 (D.N.J. May 31, 2012)........................................................18

Reece v. Homette Corp.,
   429 S.E.2d 768 (N.C. Ct. App. 1993) ...................................................................................28

Religious Tech. Ctr. v. Wollersheim,
   796 F.2d 1076 (9th Cir. 1986) ..............................................................................................43

Reves v. Ernst & Young,
   507 U.S. 170 (1993).........................................................................................................35, 36

Richard v. Hoechst Celanese Chem. Group, Inc.,
   355 F.3d 345 (5th Cir. 2003) ..........................................................................................43, 44

Riley v. Ken Wilson Ford, Inc.,
   426 S.E.2d 717 (N.C. Ct. App. 1993) ...................................................................................27

Rodio v. Smith,
   587 A.2d 621 (N.J. 1991)......................................................................................................14

Rotella v. Wood,
   528 U.S. 549 (2000)...............................................................................................................44

Shields v. UnumProvident Corp.,
   415 F. App'x 686 (6th Cir. 2011) .........................................................................................35

SHS Inv. v. Nationwide Mut. Ins. Co.,
   798 F. Supp. 2d 811 (S.D. Tex. 2011) ..................................................................................37

Slack v. Suburban Propane Partners, L.P.,
   2010 WL 3810870 (D.N.J. Sept. 21, 2010) ..........................................................................16

Solo v. Bed Bath & Beyond, Inc.,
   2007 WL 1237825 (D.N.J. Apr. 26, 2007) ............................................................................21

Space v. BRPM Towing Serv., Inc.,
No. 07-947 (JAG), 2007 WL 4570157 (D.N.J. Dec. 21, 2007)............................................20

Spence v. Glock, Ges.m.b.H.,
227 F.3d 308 (5th Cir. 2000) ...............................................................................................6, 7

St. Germain v. Howard,
556 F3d 261 (5th Cir. 2009) ....................................................................................................32

Stearns v. Select Comfort Retail Corp.,
2009 WL 1635931 (N.D. Cal. June 5, 2009) .........................................................................17

Synergy Fin., L.L.C. v. Zarro,
329 F. Supp. 2d 701 (W.D.N.C. 2004) ...................................................................................31

Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,
975 F.2d 1134 (5th Cir. 1992) .................................................................................................38

Tenn. Gas Pipeline Co. v. Technip USA Corp.,
No. 01-06-00535-CV, 2008 WL 3876141 (Tex. App. 2008) ...................................................25

Thiedemann v. Mercedes-Benz USA, LLC,
872 A.2d 783 (N.J. 2005).........................................................................................................20

Tracker Marine, L.P. v. Ogle,
108 S.W.3d 349 (Tex. App. 2003).......................................................................................7, 10

Treadway v. Lisotta,
No. 08-1375, 2008 WL 3850462 (E.D. La. Aug. 15, 2008) ...................................................41

U.S. Tire-Tech, Inc. v. Boeran, B.V.,
110 S.W.3d 194 (Tex. App. 2003) ...........................................................................................26

Vanderbilt Mortg. & Fin., Inc. v. Posey,
146 S.W.3d 302 (Tex. App. 2004).........................................................................................7, 8

Vetco Concrete Co. v. Troy Lumber Co.,
124 S.E.2d 905 (N.C. 1962)......................................................................................................31

Warma Witter Kreisler, Inc. v. Samsung Elecs. Am. Inc.,
Civ. No. 08-5380, 2010 WL 1424014 (D.N.J. Apr. 8, 2010) .................................................11

Warma Witter Kreisler, Inc. v. Samsung Elecs. Am. Inc.,
No. 08-5380, 2009 WL 4730187 (D.N.J. Dec. 3, 2009).........................................................20

Whalen v. Carter,
954 F.2d 1087 (5th Cir. 1992) .................................................................................................41

Whelan v. Winchester Prod. Co.,
   319 F.3d 225 (5th Cir. 2003) ............................................................33

Whiddon v. Chase Home Fin., LLC,
   666 F. Supp. 2d 681 (E.D. Tex. 2009).............................................18

Wireless Commc'ns, Inc. v. Epicor Software Corp.,
   No. 3:10CV556-DSC, 2011 WL 90238 (W.D.N.C. Jan. 11, 2011) ......................31

**STATUTES**

18 U.S.C. §§ 1341 & 1343.................................................................37

18 U.S.C. § 1962(c) ...........................................................32, 34, 35, 40

18 U.S.C. § 1962(d) ...............................................................................32

18 U.S.C. § 1964(a) ...................................................................42, 43, 44

18 U.S.C. § 1964(c) ...............................................................................40

N.C. Gen. Stat. § 25-2-316(2)............................................................29

N.C. Gen. Stat. § 25-2-607 ................................................................26

N.C. Gen. Stat. § 25-2-725 ................................................................29

N.C. Gen. Stat. § 25-2-725(1)............................................................27

N.C. Gen. Stat. § 25-2-725(2)............................................................27

N.J. Stat. Ann. § 2C:41-2(c) ..............................................................32

N.J. Stat. Ann. § 2C:41-2(d) ..............................................................32

N.J. Stat. Ann. § 12A:2-316(2)..........................................................29

N.J. Stat. Ann. § 56:8-2.......................................................................13

Tex. Bus. & Com. Code § 2.607(c)(1)...............................................26

Tex. Bus. & Com. Code § 2.725(a) ....................................................27

Tex. Bus. & Com. Code § 2.725(b) ....................................................27

Tex. Bus. & Com. Code § 17.50(a)(1)..................................................8

**OTHER AUTHORITIES**

E. D. Tex. Civ. R. 7(a)(1) ..................................................................................1

Fed. R. Civ. P. 8(a) .........................................................................................18

Fed. R. Civ. P. 9(b) ................................................................................. passim

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 6

Restatement (Second) Conflict of Laws [(the "Restatement")]........................... passim

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants LG Electronics, Inc. ("LG Korea") and LG Electronics U.S.A., Inc. ("LG USA," and collectively with LG Korea, "LG") hereby move the Court to dismiss Plaintiffs' Second Amended Complaint ("Complaint" or "Compl."). The issue to be decided by the Court in connection with this motion is whether Plaintiffs' allegations are sufficient to state a claim for relief. *See* E. D. Tex. Civ. R. 7(a)(1).

## INTRODUCTION

In what is now the *third* attempt to present actionable claims to sustain this lawsuit, Plaintiffs have once again struggled in vain and failed mightily. The first two complaints Plaintiffs filed in this action were littered with pleading deficiencies and defective claims, and were premised on deeply flawed concepts. Faced with motions to dismiss, Plaintiffs did not even try to defend either pleading, electing instead to file amended complaints in response. The most recent amended complaint not only fails to cure any of the prior deficiencies, but in a last-ditch, desperate act, takes the very same core facts – facts concerning *the retail sale of air conditioners* – and distorts them into some far-fetched, wildly imaginative, purported nationwide putative class action RICO claim. Plaintiffs apparently believe that by submitting an avalanche of irrelevant, inflammatory, unsubstantiated and misleading materials in, and with, their Complaint, that their failure to meet the requisite pleading standards will be lost in the morass.

As an example of the extreme disingenuousness of their allegations – not to mention the reason litigants are required to plead fraud with particularity – one need look no further than paragraph 27 in the Complaint, in which Plaintiffs claim that between 2007 and 2008 LG "experienced a known 300% global increase in thermistor failures across its entire line of HVAC products." (Compl. ¶ 27.) What Plaintiffs fail to acknowledge, however, is that the "300%" figure they chose to use was based on a reported "failure" rate increase in the Korean market of

only ***0.006% to 0.02%***.[1]  Not to mention, the claimed "failure" rates were based on sales of 2,911,639 units in 2007, and 2,357,015 in 2008.  In other words – on base sales of 2,911,639 units in 2007 – LG received a reported "failure" rate in Korea on only 176 units. It is on this type of grossly distorted fact that Plaintiffs now assert ten frivolous civil RICO claims.

Plaintiffs' tactics should be rejected.  This case merely concerns the purported experiences of four retail purchasers of air conditioner units.  Period.  The four Plaintiffs reside in four separate locations, purchased four different models and systems of air conditioners, from four different retail distributors, on four different dates over the span of three years.  One Plaintiff resides in Texas, the other three reside in North Carolina.  All of the facts concerning the purchase, use and performance of each of their air conditioners occurred in their respective home states.  For whatever reason, they banded together and decided to file suit here in Texas, asserting a litany of claims against LG Korea, located in the Republic of Korea, and its wholly-owned subsidiary LG USA, which is headquartered in New Jersey.

As Plaintiffs correctly note, LG has been active in the US consumer appliances market for more than 50 years.  (Compl. ¶ 16.)  It is no secret that the United States is a highly competitive, demanding consumer market.  Plaintiffs' theory that LG has engaged in a years-long scheme to knowingly sell defective products in the US is as illogical as it is ludicrous.  Product manufacturing companies do not survive for decades in the US consumer market, earning billions of dollars in sales, by intentionally flooding the market with defective products.

---

[1]     As the Court is aware from discussions at the March 18, 2013 Scheduling Conference, Plaintiffs' counsel are prosecuting another case against LG in another jurisdiction.  The document from which Plaintiffs concocted the "300%" "failure" increase number was produced in the other case, and was attached to Plaintiffs' Complaint here.  (Compl. Ex. 4 at LG029975.)

Plaintiffs' theory of LG's intent is as deficient as their pleadings.  None of the Plaintiffs' causes of action state claims on which relief can be granted.  Plaintiffs' effort to pursue New Jersey Consumer Fraud Act ("NJCFA") claims is entirely misguided.  Not only do Texas choice of law principles mandate a finding that New Jersey law cannot apply to Plaintiffs' consumer fraud-based claims, but New Jersey law would not permit it in the first place.  Simply stated, the NJCFA does not apply to out-of-New Jersey-state transactions.  Moreover, Plaintiffs' allegations do not plead the elements of a NJCFA claim, nor do they do so with the particularity required for *all* fraud-based claims.  Plaintiffs' contract claims, seeking recovery under the express warranty LG supplied, and the implied warranties LG openly disclaimed, all fail as well.  And it is axiomatic, given the LG express warranty, that no claims for unjust enrichment are available to Plaintiffs at all.

Given the numerous, fatal deficiencies that permeate the entire Complaint – particularly those that do not sustain any fraud-based claim – it can come as no surprise that Plaintiffs' effort to morph what is a lousy warranty claim into some sort of a global RICO claim is entirely wasted.  Plaintiffs plead no facts to demonstrate the existence of a RICO enterprise, nor do they plead facts demonstrating any requisite predicate acts of racketeering.  Because Plaintiffs fail to properly allege facts to support a consumer fraud claim, their bid to use those same facts to allege mail and wire fraud is likewise doomed.  Further, their inability to allege any actionable misrepresentations or omissions completely destroys the causal chain necessary to sustain a RICO claim.  Likewise, Plaintiffs' two RICO conspiracy claims crumble given Plaintiffs' failure to plead the other RICO claims on which their conspiracy claims are based.  In short, none of Plaintiffs' RICO claims have any viability whatsoever.

Plaintiffs' Complaint should be dismissed in its entirety, without leave to file any more futile amendments.

## STATEMENT OF FACTS

LG Korea is one of the world's leading air conditioner manufacturers.  (Compl. ¶ 17.) LG Korea distributes its products around the world through a chain of regional distributors, contractors, and retailers, who in turn showcase LG Korea products to local consumers. (Id. ¶ 19.)  In the United States, LG USA, LG Korea's wholly-owned subsidiary, is the exclusive distributor of LG-branded products, which are sold to consumers through a network of over 1,000 independent distributors and sales agents.  (Id. ¶¶ 5, 6, 8.)

Plaintiffs in this action claim to be consumers who purchased their LG-brand air conditioners from distributors in their respective home states of Texas and North Carolina.  (Id. ¶¶ 1, 2, 3, 4, 16.)  Plaintiff St. Gregory Cathedral School ("St. Gregory") has a principal place of business in Texas, and purchased LG's air conditioner units from a retailer in June 2010 for use in its school in Texas.  (Id. ¶ 1.)  Plaintiff ADK Quarter Moon, LLC ("ADK") owns a hotel in North Carolina (the Esmeralda Inn), and the Inn purchased the subject air conditioner units from a retailer in 2007.  (Id. at ¶ 2).  Plaintiff Lexmi Hospitality, LLC ("Lexmi") allegedly opened a Best Western hotel in North Carolina, and purchased LG's air conditioner units from a retailer in 2010.  (Id. ¶ 3.)  Plaintiff Shri Balaji, LLC ("Shri") allegedly runs a Super 8 Motel in North Carolina, and claims that the Super 8 Motel purchased LG air conditioner units from a retailer in 2009.  (Id. ¶ 4.)  Each of the four Plaintiffs purchased different air conditioner systems and different models, some "self-contained heating and air conditioning systems" and others with more traditional ducted air conditioner products.  (Id. ¶¶ 1-4, 21-22.)  All of the Plaintiffs

acknowledge that they received limited warranties for the air conditioner units.  (Id. ¶¶ 190, 191 & Ex. A-E.)  Each of the warranties contained prominent disclaimers.  (Ex. A-E.)

Plaintiffs allege that each of their air conditioner units failed or malfunctioned shortly after installation and use (Compl. ¶¶ 1-4), although none claims to have pursued remedies under their warranties.  (Id. ¶¶ 35, 2, 3)  Likewise, not one of them claims that LG "failed to repair or replace the defective parts," or that any "replacement part" received from LG did not "remedy the problems."  (Id. ¶ 192.)  Plaintiffs attribute the malfunctions to various unrelated "defects" in parts of the air conditioner, and also claim there were "design and manufacturing defects."  (Id. ¶ 23.)  By way of purported damages, Plaintiffs allege that they paid "more than what the product was worth" (id. ¶ 70), and that they incurred unstated "additional costs to repair or replace" LG's products.  (Id. ¶ 177.)

Plaintiffs base their claims on LG's purported "misrepresentations and concealment," but do not state that they were ever exposed to a single LG website advertisement, marketing brochure, or otherwise had any direct contact with LG before purchasing the air conditioners.  (Id. ¶ 174.)  The closest Plaintiffs come to the alleged misrepresentations is to claim that the misrepresentations were included in marketing materials that were purportedly sent to *non-party retail distributors, and not themselves* (Compl. ¶¶ 8, 38, 51 n.14 (materials "were provided to LG-licensed distributors")), and the distributors "must" have relied upon them in marketing LG's products to consumers.  (Id. ¶ 77.)  Plaintiffs also claim that LG fraudulently omitted information about purported defects in the air conditioner units from their marketing materials.  (Id. ¶¶ 60-61).  In apparent contradiction, however, Plaintiffs also allege that LG Korea announced the purported defects through a series of service bulletins issued as early as 2007, the same year that Plaintiffs allege the first of them purchased an LG air conditioner.  (Compl. ¶¶ 2, 31.)

It is based on these flawed, conclusory, contradictory and unsubstantiated claims, that

Plaintiffs pursue this suit.

## APPLICABLE LEGAL STANDARDS

A complaint should be dismissed if it fails to state claims that are plausible on their face.

Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555-56 (2007).  "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  Beavers v.

Metro. Life. Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009) (internal quotation marks omitted)

(quoting Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).  If factual

allegations are not sufficient "to raise a right to relief above the speculative level," the claim

should be dismissed.  Twombly, 550 U.S. at 555.  Any claim sounding in fraud must also satisfy

the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Flaherty & Crumrine Preferred

Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 206-07 (5th Cir. 2009) (citing Fed. R. Civ. P.

9(b)).  None of the claims asserted in the Complaint meets these pleading standards.

## ARGUMENT

### I.   A CHOICE OF LAW ANALYSIS MUST BE APPLIED TO PLAINTIFFS' STATE LAW CLAIMS

With respect to the consumer fraud and warranty-based claims, a federal district court

sitting in diversity applies the choice of law rules of the state in which it sits to determine which

state's laws governs a plaintiff's claims.  Klaxon Co v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496

(1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Spence v. Glock, Ges.m.b.H., 227 F.3d

308, 311 (5th Cir. 2000) ("In diversity cases, federal courts are obliged to apply the choice of law

rules of the forum state.") (citation omitted).  Texas choice of law rules apply here.

**A. None of the Plaintiffs Can Invoke the New Jersey Consumer Fraud Act to Pursue Their Consumer Fraud-Based Claims**

    **(1) Under Texas Conflict Rules, Texas Law Governs St. Gregory's Fraud Claim, and North Carolina Law Governs The Fraud Claims Asserted By the Three North Carolina Plaintiffs**

Contrary to Plaintiffs' bald assertion, the NJCFA does not govern their consumer protection claims. Texas has adopted the "most significant relationship" test of the Restatement (Second) Conflict of Laws (the "Restatement") to determine which state's law applies to consumer fraud-based claims. Spence, 227 F.3d at 311 ("Texas courts use the ALI Restatement's 'most significant relationship test' for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause" (citing Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984)). The first step is to determine whether an actual conflict of law exists between the relevant states. If no conflict exists, the forum's law – in this instance Texas – applies. Vanderbilt Mortg. & Fin., Inc. v. Posey, 146 S.W.3d 302, 313 (Tex. App. 2004). If a conflict does exist, the "next step in deciding choice of law is which state has the 'most significant relationship.'" Vanderbilt, 146 S.W.3d at 314. Under these principles, none of the Plaintiffs can pursue its claims under the NJCFA.

Applying the first step, Texas recognizes that the consumer protection laws of states conflict. Vanderbilt 146 S.W.3d at 313 ("[T]he Texas Supreme Court determined that the laws of the fifty states concerning deceptive trade practices conflict" (citing Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 695-96 (Tex. 2003)); Tracker Marine, L.P. v. Ogle, 108 S.W.3d 349, 357-58 (Tex. App. 2003) (applying the law of each consumer's state to the relevant claims protects parties' justified expectations, makes application of law easier, enhances certainty, predictability and uniformity of result, and encourages interstate and international trade). For example, unlike Texas and North Carolina where plaintiffs are required to plead and prove

reliance in connection with those state's consumer fraud statutes, reliance is not an element of the NJCFA.  Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007) (the NJCFA "essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove ascertainable loss").  By contrast, in Texas and North Carolina reliance is an element of a claim for deceptive business practices and false advertising.  See Tex. Bus. & Com. Code § 17.50(a)(1); Brown & Brown of Texas, Inc. v. Omni Metals, Inc., 317 S.W.3d 361, 387 (Tex. App. 2010); Bumpers v. Cmty. Bank of N. Va., 718 S.E.2d 408, 413 (N.C. Ct. App. 2011) (plaintiff must show actual reliance to establish a misrepresentation claim under the North Carolina consumer protection statute).[2]

Given this conflict, the Court must perform the second step of the conflicts analysis. Restatement § 148 applies to claims premised on fraud.  Section 148(1) articulates a rebuttable presumption that each plaintiff's state's laws should apply "where the false representations were made and received" in the plaintiff's home state.  Restatement (Second) of Conflict of Laws §148 (1971); Deep Marine Tech., Inc. v. Conmaco/Rector, L.P., 515 F. Supp. 2d. 760, 772 (S.D. Tex. 2007) ("[A] presumption exists favoring the law of the state in which the fraudulent representations were made and received, if plaintiff also relied on the representations in that state.").  The presumption can be rebutted upon a showing that another state has a more significant relationship under the factors set forth in Restatement § 6.[3]  Vanderbilt, 146 S.W.3d

---

[2]   Texas and North Carolina differ in that the Texas consumer fraud act requires a plaintiff to give "written notice" "at least 60 days before filing."  Tex. Bus. & Com. Code §17.505(a).

[3]   The factors include (i) the needs of the interstate and international systems; (ii) the relevant policies of the forum; (iii) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (iv) the protection of justified expectations; (v) the basic policies underlying the particular field of law; (vi) certainty, predictability and uniformity of result; and (vii) ease in the determination and application of the law to be applied.  Restatement (Second) of Conflict of Laws § 6 (1971).

at 315.  Alternatively, in the event that a plaintiff received the representations in a different state

than where the representations were made, courts weigh the factors in § 148(2).  Restatement

(Second) Conflict of Laws §148(2).[4]  If any two of the Restatement § 148(2) factors, apart from

the defendant's residence, are located wholly in a single state, this will usually be the state of the

applicable law with respect to most issues.  Highland Crusader Offshore Partners, L.P. v.

Motient Corp., 281 S.W.3d 237, 250 (Tex. App. 2009).

Here, St. Gregory alleges that it has a principal place of business in Texas, that it

purchased LG's air conditioner units for use in its school in Texas, and that the purchase was

from Dixon Hagar Air Conditioning.  (Compl. ¶ 1.)  Each of the other three Plaintiffs states that

it is a North Carolina LLC with principal places of business in North Carolina.  (Id. ¶¶ 2-4.)

Plaintiff ADK states that it owns a hotel in North Carolina (the Esmeralda Inn) and that the Inn

purchased the subject air conditioner units from Rutherford Heating and Air.  (Id. ¶ 2.)  Lexmi

purchased its air conditioner units from a retail establishment, Ferguson, for use at Lexmi's Best

Western hotel in North Carolina.  (Id. at ¶3)  Shri "runs a Super 8 Motel" in North Carolina,

which motel purchased LG air conditioners from Prem Sales, Ltd.  (Id. at ¶4)  Plaintiffs allege

that LG Korea, a company organized under the laws of the Republic of Korea (id. at ¶ 5)

provided LG USA, a Delaware company with its principal place of business in New Jersey (id. at

¶ 6), with sales and marketing materials concerning its air conditioner units.  (Id. ¶¶ 38, 111).

---

[4]   The § 148(2) factors include (i) the place, or places, where the plaintiff acted in reliance upon
the defendant's representations; (ii) the place where the plaintiff received the representations;
(iii) the place where the defendant made the representations; (iv) the domicile, residence,
nationality, place of incorporation and place of business of the parties; (v) the place where a
tangible thing which is the subject of the transaction between the parties was situated at the
time; and (vi) the place where the plaintiff is to render performance under a contract which
he has been induced to enter by the false representations of the defendant.  Restatement
(Second) Conflict of Laws § 148(2) (1971).

Plaintiffs allege that LG USA passed the marketing materials on to its US-based distributors. (Id. ¶¶ 8, 18, 109.)  Nowhere in the Complaint do Plaintiffs make any allegation that they received any marketing materials from LG Korea or LG USA.  Indeed, as will be discussed further regarding the merits of Plaintiffs' claims, nowhere in the Complaint does a single Plaintiff indicate that they received any marketing materials in connection with their purchases at all.  Instead, the materials were all allegedly sent to non-party retail distributors. (Id. ¶¶ 8, 38, 51 n.14.)

When these facts are analyzed under the Restatement factors, Texas has the most significant relationship to St. Gregory's consumer fraud claim, and North Carolina has the most significant relationship to the claims of the three North Carolina hotels:  each resides in Texas and North Carolina respectively; each purchased the subject air conditioner units in their home states, used the air conditioner units in their home states (where they are still located), and performance of the contract (i.e., delivery of the subject air conditioner units) occurred in their home states.  Texas courts have applied the Restatement § 148 factors to circumstances similar to these and have repeatedly determined that the law of the Plaintiff's home state should govern. Tracker Marine, L.P., 108 S.W.3d at 356 (in applying the Restatement § 148(2) factors, "the residence of the plaintiff is more important than that of the defendant, as the financial loss involved will usually be of greatest concern there."); see also Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 728 (5th Cir. 2003) (Court applied Restatement § 148 factors and found the "home state of one of the parties" had the "most significant relationship to the party's fraud claim); Fagan Holdings, Inc. v. Thinkware, Inc., 750 F. Supp. 2d 820, 826 (S.D. Tex. 2010) (Court applied law of plaintiff's residence because "[d]espite [defendant's] business

headquarters in Ohio, [plaintiff's] residence in Texas is more important . . . ."). As a result, Plaintiffs cannot legally invoke the NJCFA.

### (2) The Result Would Be The Same In New Jersey; The New Jersey Consumer Fraud Act Does Not Govern Plaintiffs' Out-of-State Transactions

If this case were filed in New Jersey, a New Jersey court would reach the same conclusion. Like Texas, New Jersey resolves conflicts under the Restatement's "most significant relationship test." P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008). If no conflict exists between New Jersey law and the law of the other state, then New Jersey's law applies. Id. If a conflict exists, the Court analyzes and determines which state has the "most significant relationship" to the claim under the § 148 Restatement factors. Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206-07 (3d Cir. 2013).

New Jersey district courts have routinely found that the NJCFA and the consumer protection laws of other states conflict, see e.g., Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 707-08 (D.N.J. 2011); Payne v. FujiFilm U.S.A., Inc., Civ. No. 07-385, 2010 WL 2342388, at *7 (D.N.J. May 28, 2010), and that, under the Restatement test, the law of the plaintiff's home state should govern any consumer fraud act claims. See e.g., Montich v. Miele USA, Inc., 849 F.Supp.2d 439, 450 (D.N.J. 2012); Arlandson, 792 F. Supp. 2d at 709; Warma Witter Kreisler, Inc. v. Samsung Elecs. Am. Inc., Civ. No. 08-5380, 2010 WL 1424014, at *4 (D.N.J. Apr. 8, 2010) (at motion to dismiss stage, court determined that allegation that product was designed in New Jersey "does not outweigh the other, more significant, ties" to plaintiff's home state). This is true even where the defendant company is based in New Jersey. See, e.g., Warma Witter, 2010 WL 1424014, at *2-4 (presumption not rebutted where defendant allegedly designed the product's operation in New Jersey); Payne, 2010 WL 2342388, at *8.

The Third Circuit recently confirmed this result, applying the Restatement §148 factors to facts almost identical to those presented here – where a non-New Jersey plaintiff purchased a product, manufactured outside the United States, from a non-party retailer in their home state, for use in their home state, even where the defendant was headquartered in New Jersey and had allegedly engaged in actionable conduct in New Jersey.  The Court concluded that the NJCFA did not apply to the plaintiff's claim and it affirmed the lower's court's decision granting summary judgment to the defendant.  <u>Maniscalco</u>, at 211.  In <u>Maniscalco</u>, the plaintiff – a South Carolina resident – purchased a product in South Carolina, which had been manufactured in Japan and distributed by a New Jersey company.  <u>Id</u>. at 204-05.  The plaintiff asserted an omission claim under the NJCFA against the New Jersey distributor.  <u>Id</u>. at 202.  The lower court granted summary judgment to the New Jersey distributor-defendant.  <u>Id</u>.  The Third Circuit affirmed, finding that New Jersey's choice of law rules required application of South Carolina law to plaintiff's claim.  <u>Id</u>. at 211.  The Court applied the Restatement § 148 test and concluded that the law of South Carolina, where plaintiff resided and had purchased the subject product, governed plaintiff's claim, not the law of the State where defendant resided (New Jersey).  <u>Id</u>. at 207-09.

The court specifically accepted the "premise that there were actionable omissions by [the defendant] at its headquarters in New Jersey," but still found that an insufficient basis to apply New Jersey law.  <u>Id</u>. at 208.  The Court noted:

> Nothing else about the relationship between the parties, other than the fortuitous location of [defendant's] headquarters, took place in the state of New Jersey. [Plaintiff's] home state, in which he received and relied on [defendant's] alleged fraud, has "the most significant relationship" to his consumer fraud claim.

<u>Id</u>. at 208-209.  The Third Circuit also addressed the plaintiff's argument that New Jersey's deterrence interest required application of New Jersey law, but squarely rejected that argument:

> While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state.  New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.

Id. at 210.  The court further stated: "[a]pplying New Jersey law to every potential out-of-state claimant would frustrate the policies of each claimant's state" and that "most importantly, the interest of South Carolina in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud."  Id. at 209.

The outcome should be the same here.  Plaintiffs' request to apply New Jersey law to their purported consumer fraud claims should be rejected as it ignores the respective states in which the transaction occurred, the states where the purchasers of the air conditioner units reside, and the interests of those states in having their laws apply to their own consumers.

## II.   EVEN IF PLAINTIFFS CAN PURSUE A CONSUMER FRAUD CLAIM UNDER THE NEW JERSEY STATUTE, THEY HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The NJCFA requires Plaintiffs to establish:  (i) unlawful conduct by the defendant, (ii) an ascertainable loss by the plaintiff, and (iii) causation.  N.J. Stat. Ann. § 56:8-2; N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 176 (N.J. App. Div. 2003).  Plaintiffs have not alleged any of these elements.

### A.  Plaintiffs Have Not Identified Any Actionable "Misrepresentation"

Throughout the Complaint Plaintiffs make numerous conclusory references to LG's "uniform" marketing and advertising.  (E.g. Compl. ¶¶ 37, 38, 43, 51.)  The majority of the claimed "misrepresentations" are set forth in paragraphs 51, 52, 54 and 77 of the Complaint.

When those statements are carefully analyzed, however, it is apparent that none of them provides the proper foundation for a NJCFA claim.

### (1) The Claimed "Misrepresentations" Are Non-Actionable Sales Puffery Because They Do Nothing More Than Tout The Superiority of Defendants' Products and Make Unverifiable, Subjective Claims

Plaintiffs' consumer fraud count fails because the purportedly actionable statements are sales-speak, expressions of opinion, and nothing more than "sales puffery," statements which by law are not actionable because they cannot deceive a *reasonable* consumer.  See In re Toshiba Am. HP DVD Mktg. & Sales Practices Litig., 2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009) (advertising that is nothing more than "mere puffery is not actionable because no reasonable consumer relies on puffery"); see also Rodio v. Smith, 587 A.2d 621, 624 (N.J. 1991) (New Jersey Supreme Court found that Allstate's slogan "You're in good hands with Allstate" was not a statement of fact that could support a NJCFA claim or a common law fraud claim, stating the slogan "You're in good hands with Allstate' is nothing more than puffery"); In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig., 834 F. Supp. 2d 566, 591 (S.D. Tex. 2011) ("New Jersey law distinguishes between factual misrepresentations and 'puffery.'").  "The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions."  See In re Toshiba, 2009 WL 2940081 at *10; Heartland, 834 F. Supp. 2d at 591 (analyzing a claim under the NJCFA).  All of the alleged "misrepresentations" here are highly subjective, incapable of being measured, and simply express opinions about the future performance of the products.

### a)  Statements That Brag About Product Superiority, Excellent Performance, and Quality Are Not Actionable

All of the alleged misrepresentations are non-actionable statements touting, *inter alia*, product superiority, product quality, energy-efficiency, and the quiet manner in which the units

operate.  None of the statements refers to any other competitive model, or makes any verifiable comparison to any other identifiable model, which is key given Plaintiffs' cry that they would have otherwise purchased a different company's air conditioner.  (Compl. ¶ 175.)  Many of the statements simply boast about the quality, efficiency, and superiority of LG's air conditioners:

> "Whether you're created a quiet, comfort controlled room, or simply want to heat or cool an area without expensive ductwork, LG's duct-free systems set a new standard for efficiency, great looks and comfort."  (Compl. ¶ 52.)

> "An Easy, Cost-efficient Way to Air Condition Your Rooms."  (Id.)

> "**Better air circulation**.  Computer controlled louvers and fan speeds minimize temperature differences in the room."  (Id.)

> "**High Efficiency Rotary Compressor**.  Energy efficient and maintenance-free operation."  (Id.)

These types of statements do not support a NJCFA claim.  See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II), 2008 WL 4126264, at *3 (D.N.J. Sept. 02, 2008) ("Describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations" held to be "mere puffing" (quoting Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 847 (Ill. 2005))); see also In re Toshiba., 2009 WL 2940081, at *10 (Defendant's statement that HD DVD Players were the "best of high-definition television and DVD" was inactionable puffery); Hughes v. Panasonic Consumer Elecs. Co., 2011 WL 2976839, at *12 (D.N.J. July 21, 2011) (Panasonic's statements about the product's "industry leading black levels and contrast ratios" as well its representations about the television technology's ability to render images "the way the director intended" and producing "breathtaking" and "vivid" colors are non-actionable puffery).  The bulk of Plaintiffs' allegations contain statements that fall into this category – the statements are non-specific, provide no absolute characteristic about the product, and are generalized, subjective claims about product superiority.  They are not actionable.

**b) Statements About Future Expectations, Subjective Cost Effectiveness and "A Good Night's Sleep" Are Sales Puffery**

Similarly, many of the statements Plaintiffs list concern future expectations, or are subjective statements about the claimed cost effectiveness of the air conditioners, or about getting a "good night's sleep." For example:

> "**Reduced energy costs**. You can cut your cooling bill with LG's energy-efficient technology. Look for our **Inverter Air Conditioners** featuring high-performance variable-speed compressors and our **Multi Power System™** with exclusive dual compressor technology." (Compl. ¶ 52.)

> "Whether heating or cooling, *LG PTAC units provide cost-efficient ways to condition the air in your rooms. Additionally, maintenance and service of these units is easy for property owners.* With a wide choice of capabilities, and available in both heat/cool and heat pump options, your customers will find just the right application to enhance their space." (Id.)

> "At LG Electronics, *quiet is the word for our PTAC units.* Getting a good night's sleep is critical in the hospitality and healthcare industries, and our units are known for providing a quiet experience for your guests or residents. Combined with our optional energy management thermostats, *LG PTACs provide quiet comfort and energy efficient savings in both heat/cool and heat pump models.* (Id.)

None of the claims in these statements is actionable either. Statements about value – a product being "economical" or "cost efficient" – are regularly disregarded as non-actionable puffery. Slack v. Suburban Propane Partners, L.P., 2010 WL 3810870, at *5 (D.N.J. Sept. 21, 2010) (holding that "[w]hen you shop at Suburban Propane, you get ... the best value!" was not a statement of fact, but rather non-actionable puffery); see also Glass v. BMW of N. Am., LLC, 2011 WL 6887721, at *6 (D.N.J. Dec. 29, 2011); In re Toshiba, 2009 WL 2940081, at *9 ("Representations by a seller as to the value of his property are not usually a basis for a claim of fraud.... Value is a matter of opinion." (citation omitted)).

Additionally, it is well-settled that a "statement or misstatement as to future expectations or probabilities, or as to what will or will not be done in the future, does not constitute a

misrepresentation even though it may turn out to be wrong." Hunt Constr. Group, Inc. v. Hun
School of Princeton, 2009 U.S. Dist. LEXIS 39687, at *13 (D.N.J. May 11, 2009); accord
Campmor, Inc. v. Brulant, LLC, 2011 U.S. Dist. LEXIS 74861, at *33 (D.N.J. July 12, 2011)
("Opinions, estimates, and other representations concerning future events are not assurances of
fact and thus do not constitute misrepresentations." (internal quotation marks and citations
omitted)).

Likewise, statements about providing a "good night's sleep" are not objectively
measurable and verifiable; such statements are expressions of opinion and are not actionable.
See, e.g. Stearns v. Select Comfort Retail Corp., 2009 WL 1635931, at *10-11 (N.D. Cal. June 5,
2009) (advertising slogans such as "'[y]our Sleep Number is key to a perfect night's sleep',
statements indicating that Sleep Number beds provide 'an ideal level of bed comfort, firmness
and support,' and promises that a user would never have 'a better night's sleep'" are "mere
puffery" and that "[n]o reasonable consumer would believe that a Sleep Number® bed
miraculously would deliver the elusive 'perfect night's sleep'").

### (2) The Purported "Misrepresentations" Are Too General and Lack Sufficient Precision To Meet Rule 9(b)'s Heightened Pleading Standard

Even if Plaintiffs could point to a viable misrepresentation, they have not substantiated
their consumer fraud claims with the requisite level of particularity.  Plaintiffs apparently hope
that by submitting with their Complaint, a slew of inadmissible, inflammatory materials that
have nothing to do with Plaintiffs' claims, the Court will be persuaded to overlook Plaintiffs'
pleading failures.   Likewise, Plaintiffs apparently hope that their tactic to pepper the Complaint
with requests to take discovery first so that they can meet their pleading requirements later (e.g.,
Compl. ¶¶ 9, 30, 32, 34, 77) will somehow carry the day.  That is precisely what is not allowed
to occur.  A plaintiff pleading fraud must set forth the "'the who, what, when, and where . . .

17

*before* access to the discovery process is granted.'" ABC Arbitrage Plaintiffs Grp. v. Tchuruk, 291 F.3d 336, 349 (5th Cir. 2002) (quoting Williams v. WMX Techs., Inc., 112 F.3d 175, 178 (5th Cir. 1997) (emphasis in original)); see also Whiddon v. Chase Home Fin., LLC, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009) (Court dismissed plaintiff's fraud claim, noting that "Rule 9(b) does not permit a party to make conclusory allegations and then, through the discovery process, gain more specific information . . . ."). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." Hart v. Bayer Corp., 199 F.3d 239, 247 n.6 (5th Cir. 2000).

Instead, Plaintiffs must plead each element of the NJCFA claim with the "heightened pleading requirement" of Rule 9(b), "over and above that required by Rule 8(a)." Hughes v. Panasonic Consumer Elects. Co., 2011 WL 2976839, at *10. Rule 9(b) requires a plaintiff to explicitly aver the "who, what, when, where and how" of the allegedly fraudulent conduct. See Alban v. BMW of N. Am., Civ. No. 09–5398, 2011 WL 900114, *10 (D.N.J. Mar. 15, 2011) (citing In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276–77 (3d Cir. 2006)). Additionally, Plaintiffs must plead facts explaining why the statements were false when made. See RBC Bank (USA) v. Petrozzini, No. 12-155, 2012 WL 1965370, at *3 (D.N.J. May 31, 2012) (NJCFA counterclaim dismissed, noting that allegations lacked "any specific explanation as to why such statements were false"); Busse v. Homebank, LLC, No. 07-3495, 2008 WL 2357865, at *3 (D.N.J. June 5, 2008) (Complaint that "fail[ed] to . . . demonstrate why [the] statements were false or misleading" did not meet Rule 9(b) pleading requirements). These heightened requirements "give[] defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce the number of frivolous suits brought solely to extract settlements." Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 702

(D.N.J. 2011) (citing <u>Naporano Iron & Metal Co. v. Am. Crane Corp.</u>, 79 F. Supp. 2d 494, 511

(D.N.J. 2000)).  Plaintiffs have failed to meet these requirements.

First, Plaintiffs admit that the allegedly misrepresentations were contained in marketing

materials that were purportedly sent to *non-party retail distributors, and not themselves*.

(Compl. ¶¶ 8, 38, 51 n.14 (materials "were provided to LG-licensed distributors").)[5]  Not a

single Plaintiff claims to have received, seen, reviewed or considered any LG marketing piece

whatsoever.  Likewise, even though each Plaintiff identifies the non-party retail store from which

it purchased the air conditioner units (<u>id</u>. ¶¶ 1-4), none of them states with any specificity *which*

LG marketing materials each retailer received, *when* the retailer received them (especially in

relation to that Plaintiff's purchase), *whether* the retailer actually read any particular marketing

item, *what* the marketing piece stated precisely, *or whether any of the four retailers made a*

*single representation to the Plaintiff in question*.  Given that the four Plaintiffs reside in four

different locations, purchased the air conditioners from four different retailers, on four different

dates over the span of more than three years, this attempt to lump them all together with no

particulars whatsoever is wholly inadequate to meet Rule 9(b)'s standards.  <u>Lum v. Bank of Am.</u>,

361 F.3d 217, 224 (3d Cir. 2004) ("Plaintiffs must also allege who made the representation to

whom and the general content of the misrepresentation."), <u>abrogated on other grounds</u>, <u>In re Ins.</u>

<u>Brokerage Antitrust Litig.</u>, 618 F.3d 300 (3d Cir. 2010).

Second, none of the proffered "misrepresentations" sets forth any particularized fact that

was relevant to the actual experience of any one Plaintiff, nor does any Plaintiff identify with

particularity how any specific statement was "false" as to them.  For example, Plaintiffs refer to a

---

[5]   Indeed, Plaintiffs ADK and Shri are not even the actual purchasers of the air conditioners
about which they complain (Compl. ¶¶ 2, 4), so their connections to the allegedly
misrepresentations are even more remote than Plaintiffs St. Gregory and Lexmi.

list of purportedly uniform claims about the number of "BTUs" that would be "put out," the "fan speed" of certain models, the "amperages" of certain models (Compl. ¶ 51), and yet they do not link any of those general, vague statements to the models and units that *they* purchased (and they all purchased different models and different units (id. ¶¶ 1-4)), nor, for example, do they provide any specific information that *their* particular air conditioner operated at a different BTU, fan speed or amperage level than what was purportedly claimed.  Thus, even if Plaintiffs could pursue these out-of-state transactions under the NJCFA, which the recent Third Circuit Maniscalco decision confirms they cannot, they have in any event failed to properly allege a NJCFA claim and the cause of action should be dismissed.  See Graddy v. Deutsche Bank, No. 11-3038, 2013 WL 1222655, at *4 (D.N.J. March 25, 2013) (NJCFA claim dismissed because plaintiffs did not plead the elements with "the requisite particularity"); see also Warma Witter Kreisler, Inc. v. Samsung Elecs. Am. Inc., No. 08-5380, 2009 WL 4730187, at *5 (D.N.J. Dec. 3, 2009) (NJCFA claims dismissed for failure to plead facts with the necessary specificity); Space v. BRPM Towing Serv., Inc., No. 07-947 (JAG), 2007 WL 4570157, at *5 (D.N.J. Dec. 21, 2007) (Court dismissed CFA claim due to "Plaintiff's pleading deficiency").

### (3)  Plaintiffs Have Failed To Plead An "Ascertainable Loss"

In addition, Plaintiffs have not alleged an "ascertainable loss" under the NJCFA.  New Jersey's Supreme Court has articulated the requisite standards:  an "ascertainable loss" must be a "real and measurable loss of property or moneys," a "cognizable and calculable" loss that cannot be "hypothetical" or "illusory."  Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 792-93, 796 (N.J. 2005).  "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable."  Id. at 793.  Moreover, "to the extent that [a] plaintiff seeks to prove only that the price charged for [the product] was higher than it should have been as a result of defendant's fraudulent marketing campaign, and seeks thereby to be relieved of the usual

20

requirements that plaintiff prove an ascertainable loss, the theory must fail." Int'l Union, 929 A.2d at 1088.

Here, Plaintiffs' theory of "ascertainable loss" is precisely what the New Jersey Supreme Court has already rejected.  Plaintiffs' damages theory is that they paid "more than what the product was worth" (Compl. ¶ 70), they paid "artificially and uniformly inflated prices" (id. ¶ 91), they paid "full price instead of paying less or buying a competitor's air conditioners" (id. ¶ 173), "they would not have purchased the [air conditioners] or would have paid less" (id. ¶ 174), and that "they incurred additional costs to repair or replace" LG's products.  (Id. ¶ 177)  Hence, under Thiedemann and Int'l Union Plaintiffs' theory fails.

Additionally, the Complaint fails to provide the necessary particulars and facts.  For example, none of the Plaintiffs specifies what each one's purported repair and replacement costs actually were.  Plaintiffs state nothing more than "plaintiffs . . . suffered an ascertainable loss by purchasing . . . defective air conditioners that are unable to perform their essential function of heating and cooling for the expected useful life of the unit. . . . The plaintiffs also incurred additional costs to repair or replace" the products."  (Compl. ¶ 177.)  More is required to plead an "ascertainable loss" under the NJCFA and Rule 9(b).  See Parker v. Howmedica Osteonics Corp., 2008 WL 141628, at *4 (D.N.J. Jan. 14, 2008) (alleged "out-of-pocket costs of medical tests" insufficient to plead "ascertainable loss" where plaintiffs "offer[ed] no facts to evidence that they actually have undergone any medical tests . . . or to provide the Court with a measurable specificity of the costs"); Solo v. Bed Bath & Beyond, Inc., 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (plaintiff failed to "plead specific facts setting forth and defining the ascertainable loss suffered" where he alleged the purchase of "a sheet set that was advertised as having a '1000 Thread Count,' but . . . actually had a thread count of only 492," but failed to

allege with particularity that the "sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss").

### (4) Plaintiffs Have Failed To Plead Any Causal Nexus Between Defendants' Alleged Conduct And Plaintiffs' Purported Damages

Even if Plaintiffs' allegations were somehow sufficient to allege that LG had engaged in unlawful conduct and that each Plaintiff had sustained an ascertainable loss, Plaintiffs' NJCFA claim would still fail for lack of any causal connection between the two.  In order to satisfy the pleading standard, a plaintiff "must allege facts establishing a causal nexus with the particularity required by Rule 9(b).  Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 303 (D.N.J. 2009); see N.J. Citizen Action, 842 A.2d at 178 ("[P]laintiffs must [] plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained.").

Plaintiffs' claims are deficient because, as noted above, there are no allegations or any specificity that any of the Plaintiffs received, saw or considered any LG marketing material in connection with their decision to purchase the LG air conditioners.  Nor is there any specificity regarding *what* each of the retail distributors received, *when* they received any particular marketing item, *how* it related in time to any plaintiff's purchase, and what *if anything* they said to each Plaintiff.  Failure to plead facts establishing the exact content and timing of allegedly fraudulent statements or a plaintiff's exposure to such statements is fatal to a NJCFA claim.  See Glass v. BMW of N. Am., 2011 WL 6887721, at *11-12 (NJCFA claim dismissed because without alleging "when the statements were made or at what point . . . each Plaintiff was exposed to one or more of the statements . . . Plaintiffs have not properly plead [sic] a 'causal nexus' with the particularity required by Rule 9(b).").

### B.  Plaintiffs' Fraud-Based Omission Theory Fails To State A Claim

Plaintiffs also attempt to support the NJCFA claim on the basis of a purported omission. An omission claim will only succeed, however, if Plaintiffs first establish that the Defendants had a duty to make the disclosure.  Arcand v. Brother Int'l Corp., 673 F.Supp.2d at 297 ("Obviously, there can be no [unlawful conduct], or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place.").  Here, Plaintiffs have pleaded no facts at all to identify what "duty" Defendants allegedly had to make the alleged omitted-disclosures.  Instead, they strain mightily to concoct a duty, by pointing to LG's internal code of conduct and by pointing to service bulletins issued by LG.  (Compl. ¶¶ 31, 41, 48, 56, 57, 58.) Neither creates any obligation on the part of LG to make a disclosure about a potential defect.  In fact, courts routinely reject plaintiff's arguments that attempt to interpret a company's decision to issue a service bulletin "as potential admissions of fraudulent concealment of a defect."  See e.g. Alban v. BMW of N. Am., LLC, 2011 WL 900114, at *12 (claims predicated on service bulletins should not proceed because manufacturers may otherwise be discouraged from responding to customers' complaints in the first place).  With respect to LG's internal Code of Conduct, its plain language provides that it "does not create any contractual rights or obligations." (Compl. Ex. A at 9.)  To find otherwise would again discourage companies from adopting and implementing such internal codes.  Last, New Jersey law is clear – there is no obligation to disclose knowledge of the "possibility" of a failure.  Alban v. BMW of N. Am., LLC, 2010 WL 3636253, at *10 (D.N.J. Sept. 2010).

23

### III.     PLAINTIFFS HAVE FAILED TO STATE AN EXPRESS WARRANTY CLAIM, IRRESPECTIVE OF WHICH STATE'S LAW APPLIES

#### A.  In the Event of A Conflict, The Law of Each Plaintiff's Home State Governs The Express Warranty Claims

Plaintiffs summarily claim that New Jersey law applies to their breach of express warranty claims.  Under Texas choice of law principles, the factors in Restatement § 188 must be analyzed to determine which state has the "most significant" relationship to the claim, if the Court has first determined that a conflict exists between the different state's laws.  Compaq Computer Corp. v. Lapray, 135 S.W.3d 657 (Tex. 2004).  The § 188 factors consider "(1) the place of contracting, (2) the place of negotiation[s], (3) the place of performance, (4) the location of the subject matter of the contract and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement § 188 (1971).

Balancing those factors here results in the conclusion that the law of each Plaintiff's home state governs warranty claims.  For St. Gregory, the "place of contract," the "place of negotiation" and the "location" of the air conditioners, all point to Texas, as St. Gregory is located there and purchased the air conditioner units from Dixon Hagar Air Conditioning. (Compl. ¶ 1.)  The factor weighing the residence of the parties results in a three-way tie between Texas, Korea and New Jersey, and is, therefore, of no import to the analysis.  Likewise, for the three North Carolina hotels, the factors all point to North Carolina as the governing law for the same reasons.

#### B.  Plaintiffs Do Not State An Express Warranty Claim Under The Plain Terms of LG's Warranty

As a threshold matter, Plaintiffs' express warranty cause of action fails to state a claim on its face.  Plaintiffs point to the following statement in the warranty:

> Should your LG product prove to be defective in materials or workmanship under normal use during the warranty period listed below, LG Electronics will replace

the defective part(s).  Replacement part(s) will meet intended fit and function of the original parts.

(Compl. ¶ 191.)  Plaintiffs then allege that LG "breached this warranty by failing to repair or replace the defective parts [and that] [w]hen replacement parts were provided, they would not remedy the problems that had given rise to the need to have the unit repaired." (Id. ¶ 192.)  The warranty periods depend on the product purchased by Plaintiffs.[6]  The warranty periods range from 1 year to 3 years, depending on the model purchased.  (Ex. A-E.)  Nevertheless, a key pleading problem for each of the four Plaintiffs is that *nowhere* in the Complaint does any one of them state that they contacted LG during the applicable warranty period, that having done so LG "failed to repair or replace the defective parts," or that any "replacement part" received from LG did not "remedy the problems."  (See Compl. ¶ 192.)  Plaintiffs appear to have jumped the gun, ignoring the well-established legal principle that on a motion to dismiss a putative class action the Court reviews the allegations *only* as to the named plaintiffs and not as to any unidentified, putative class members.  See e.g. Hilton v. Atlas Roofing Corp. of Miss., 2006 WL 1581239, at *2 (E.D. La. May 18, 2006) ("Prior to class certification, the Court will treat the case as brought by the named plaintiff individually") (citing Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 n.4 (5th Cir. 1994)).  Thus, under Texas law, Plaintiff St. Gregory's express warranty claim must be dismissed, see Tenn. Gas Pipeline Co. v. Technip USA Corp., No. 01-06-00535-CV, 2008 WL 3876141, at *21 (Tex. App.

---

[6]   Copies of the subject warranties are submitted with this motion to dismiss.  (See Ex. A-E.)  The Court is permitted to accept and review the warranty in light of Plaintiff's specific reference to it in the Complaint.  See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000); Taliaferro v. Samsung Telecomms. Am., LLC, 2012 WL 169704, at *2 n.3 (N.D. Tex. Jan. 19, 2012) (on a motion to dismiss express and implied warranty claims, Court considered the language in the warranty that plaintiffs had referred to in Complaint, and which defendants had attached to their motion to dismiss).

2008) ("When a contract provides for a particular form of notice, compliance with such provisions is a condition precedent to invoking the contract rights which are conditioned on notice.") (internal quotations and citations omitted), and under North Carolina law the result for the three North Carolina Plaintiffs is the same.  See Allen v. Roberts Const. Co., Inc., 532 S.E.2d 534, 543 (N.C. App. 2000) (defendant awarded directed verdict on express warranty claim where plaintiff did not provide notice of breach as required by terms of express warranty).

### C.  Plaintiffs' Express Warranty Claims Suffer From Additional Fatal Defects

#### (1)  Plaintiffs' Claims Fail For Lack of Pre-Suit Notice

In addition to the fact that the LG warranty sets forth express terms requiring purchasers to provide LG with notice in order to invoke the warranty, in both Texas and North Carolina there is a separate statutory pre-suit notice requirement that is a condition precedent to any claim. See e.g., Tex. Bus. & Com. Code §2.607(c)(1); U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 200 (Tex. App. 2003); N.C. Gen. Stat. § 25-2-607 ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . ."). This notice is a condition precedent to any recovery by plaintiff. U.S. Tire-Tech, Inc., 110 S.W.3d at 200 ("The burden of alleging and proving notice under 2.607(c)(1) is . . . on the buyer" and is "a condition precedent for a buyer's cause of action." (citations omitted)); Maybank v. S. S. Kresge Co., 273 S.E.2d 681, 683 (N.C. 1981) ("We think it obvious from the language of the statute that seasonable notification is a condition precedent to the plaintiff-buyer's recovery [and] "the burden of pleading and proving that seasonable

notification has been given is on the buyer." (citation omitted)).[7]  None of the Plaintiffs pleaded that they provided notice prior to initiating this suit.

### (2)    ADK's Express Warranty Claim is Time-Barred

Plaintiffs commenced this suit on October 4, 2012.  [Docket #1.]  The limitations period for express warranty claims in both Texas (the forum state) and North Carolina (ADK's home state) is four years.  Tex. Bus. & Com. Code §2.725(a); N.C. Gen. Stat. § 25-2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); see Riley v. Ken Wilson Ford, Inc., 426 S.E.2d 717, 721 (N.C. Ct. App. 1993) (Court applied four-year statute of limitations to breach of express warranty claim).  The claim for breach of express warranty accrues upon "tender of delivery."  Tex. Bus. & Com. Code § 2.725(b); N.C. Gen. Stat. § 25-2-725(2); Bernick v. Jurden, 293 S.E.2d 405, 444 (N.C. 1982) ("[A] cause of action accrues when the breach occurs . . . and . . . a breach of warranty occurs . . . when tender of delivery is made.").

ADK alleges that Esmeralda Inn purchased the LG air conditioner unit on an un-specified date in 2007, and had it delivered the same year – as indicated by the allegation that the units had purportedly experienced "premature" failures "[s]ince 2007."  (Compl. ¶ 2.)  With more than four years elapsing in between the time of delivery and the time of suit (not to mention in between the time of alleged failure and filing suit), ADK's express warranty claim independently fails for lack of timeliness.  See Pecan Valley Nut Co. v. E.I. du Pont de Nemours & Co., 15

---

[7]    Plaintiffs' claims would have been defective in New Jersey as well.   N.J. Stat. Ann. § 12A2:607 ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . .").  "[T]his statutory notice is a 'condition precedent to filing any suit for breach of warranty.'"  Dicuio v. Brother Int'l Corp., No. 11-1447 (FLW), 2012 WL 3278917, at *11 (D.N.J. Aug. 9, 2012).  Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 253 (3d Cir. 2010) (dismissal of breach of express warranty claim affirmed, finding Defendant not obligated to perform under the warranty because plaintiff failed to provide the requisite notice).

SW.3d 244, 249 (Tex. App. 2000) (breach of express warranty claim was barred by four-year

statute of limitation period, accruing from date of delivery); Reece v. Homette Corp., 429 S.E.2d

768, 771 (N.C. Ct. App. 1993) (breach of express warranty claim would have been barred by

four-year statute of limitation from tender of delivery regardless of parties' private contractual

one-year warranty period).[8]

## IV.    PLAINTIFFS' IMPLIED WARRANTY CLAIMS WERE DISCLAIMED, AND MUST BE DISMISSED

Plaintiffs assert a cause of action based on the allegation that Defendants breached the

implied warranty of merchantability because the air conditioners were "not of merchantable

quality at the time of sale, as they were not fit for the ordinary purposes for which similar goods

are used and did not conform to the promises or affirmations of fact made in the promotional

literature."  (Compl. ¶ 201.)  This cause of action fails because LG expressly disclaimed all

implied warranty claims at the time of sale, and did so prominently and unequivocally.  LG's

limited warranties state in bold print:

> **THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(Ex. A, C-E.)  Disclaimers of implied warranties are expressly authorized by statute in

Texas, North Carolina and New Jersey, as long as the disclaimers are "conspicuous."  See

Cate v. Dover Corp., 790 S.W.2d 559, 560 (Tex. 1990) ("[A] term or clause is

conspicuous when it is so written that a reasonable person against whom it is to operate

---

[8]    The outcome would have been the same in New Jersey well.  See, e.g., N.J. Stat. Ann. § 12A:2-725; N.J. Stat. Ann. § 12A:2-725; Deluxe Sales and Serv., Inc. v. Hyundai Eng'g & Constr. Co., 603 A.2d 552, 554 (N.J. App. Div. 1992) ("cause accrues when tender of delivery is made"); Travelers Indem. Co. v. Dammann & Co., 592 F. Supp. 2d 752, 758, 765 (D.N.J. 2008) (express warranty claim "barred by the statute of limitations" where party "did not seek leave to file. . . until more than four years after the delivery").

ought to have noticed it." (quoting Tex. Bus. & Com. Code Ann. 1.201 (10), and citing Tex. Bus. & Com. Code Ann. 2.314(a), 2.316(b))); N.C. Gen. Stat. s.25-2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."); N.C. Gen. Stat. s 25-1-201(1)); N.J. Stat. Ann. § 12A:2-316(2) (written warranty may "exclude . . . the implied warranty of merchantability" so long as disclaimer is "conspicuous"); see also Moulton v. LG, 2012 U.S. Dist. LEXIS 117931, at *5-6 (dismissing express warranty claim where "LG disclaimed any additional warranties"). Here, there can be no argument challenging the prominence of the disclaimer which was presented in all-caps, bold print.

### (1) ADK's Implied Warranty Claim is Time-Barred

As discussed above, North Carolina law governs ADK's warranty-based claims, including the claim for breach of implied warranty. Even if ADK could escape the clear import of the disclaimer set forth in LG's warranty, its implied warranty claim would still be dismissed for lack of timeliness. The limitations period for an implied warranty claim in North Carolina is four years, and it accrues at the time delivery is made. N.C. Gen. Stat. § 25-2-725. For the same reasons that ADK's express warranty claim is time-barred, so too is its claim for breach of an implied warranty. (See supra pp. 24-28.)

## V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A SUBSTITUTE FOR THE DEFECTIVE WARRANTY CLAIMS AND SHOULD BE DISMISSED

Plaintiffs' unjust enrichment claim fails for several reasons. First, like the fraud claims the unjust enrichment claims are doomed for lack of particularity. Second, Plaintiffs cannot

pursue a quasi-contract claim having alleged that LG provided them with a warranty.  Third, the

unjust enrichment claims fail for lack of privity.

### A.  As Was the Case With The Consumer Fraud Claims, Plaintiff's Unjust Enrichment Claims Fail Due to Lack Of Sufficient Particularity

Plaintiffs title Count Twelve in the Complaint as "Unjust Enrichment Under New Jersey

Law."  (Compl. ¶ 65.)  Wholly apart from the fact that Plaintiffs ignore any choice of law

analysis for this claim, they also ignore the fact that where an unjust enrichment claim in New

Jersey is premised on a defendant's alleged fraudulent actions, plaintiffs must plead the unjust

enrichment claim with Rule 9(b) particularity.  "The District of New Jersey has required a party

setting forth an unjust enrichment claim with facts underlying in fraud to state the fraudulent acts

underlying the unjust enrichment claim with the 'particularity' required by Rule 9(b)."  See Crete

v. Resort Condos, Int'l LLC, 2011 U.S. Dist. LEXIS 14719, at *16 (D.N.J. Feb. 14, 2011).

There is no question that the factual allegations underlying Plaintiffs' unjust enrichment claims

sound in fraud (Compl. ¶¶ 185, 186), and therefore, even if New Jersey law were to apply, the

unjust enrichment claims would fail for the same lack of particularity as discussed with respect

to the consumer fraud claims.  (See supra pp. 13-23.)

### B.  Plaintiffs Cannot Recover in Quasi-Contract Because They Acknowledge Valid Contracts That Govern the Parties' Relationship

Plaintiffs openly acknowledge receipt of LG's limited warranty.  They cannot, therefore,

under the laws applicable in Texas, North Carolina and New Jersey, simultaneously pursue a

claim in quasi-contract.  There is no conflict on this point.  In Texas, where a valid, express

contract covers the subject matter of the parties' dispute Texas does not permit recovery under

the quasi-contract theory of unjust enrichment.  See First Union Nat'l Bank v. Richmont Capital

Partners I, L.P., 168 S.W.3d 917, 931 (Tex. App. 2005) (unjust enrichment claims are

"predicated on the absence of an express contract controlling the circumstances").  The same is

true in North Carolina where "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter."  Vetco Concrete Co. v. Troy Lumber Co., 124 S.E.2d 905, 908 (N.C. 1962) (citing Ranlo Supply Co. v. Clark, 102 S.E.2d 257 (N.C. 1958)); Modern Ice Equip. & Supply Co. v. Snow Park USA, LLC, No. 3:10-CV-134, 2011 WL 3515862, at *3 (W.D.N.C. Aug. 11, 2011) (Court found sales contract with "as is" provision to be a valid contract that precluded plaintiff's unjust enrichment claim).  District courts applying North Carolina law have granted motions to dismiss unjust enrichment claims because a contract existed between the parties.  See Wireless Commc'ns, Inc. v. Epicor Software Corp., No. 3:10CV556-DSC, 2011 WL 90238, at *7 (W.D.N.C. Jan. 11, 2011) (motion to dismiss claim for unjust enrichment granted because "[g]iven the existence of an actual contract, this Court will not recognize the existence of a quasi-contract."); Synergy Fin., L.L.C. v. Zarro, 329 F. Supp. 2d 701, 707 (W.D.N.C. 2004) (unjust enrichment claim dismissed because the contract between the parties "governs the claim and the law will not imply a contract.").  Likewise, Plaintiffs' claims would not survive in New Jersey either.  See Estate of Gleiberman v. Hartford Life Ins. Co., 94 F. App'x 944, 947 (3d Cir. 2004) (affirming dismissal of unjust enrichment claim because such claims "are only supportable when the parties' rights are not governed by a valid, enforceable contract").

With no conflict, Texas law governs.  Plaintiffs have expressly alleged the existence of a written warranty agreement.  (Compl. ¶¶ 190-192.)  They have no available basis, therefore, to pursue a claim for unjust enrichment.  See Baker v. Deutsche Bank Nat'l Trust Co., No. 4:11-CV-61, 2011 WL 5600312, at *3, 4 (E.D. Tex. Oct. 20, 2011) (unjust enrichment claim dismissed where "complaint affirmatively allege[d] the existence of a valid, express contract covering the subject matter of this dispute"); Coghlan v. Wellcraft Marine Corp., 240 F.3d 449,

454 (5th Cir. 2001) (dismissal of unjust enrichment claims affirmed because plaintiffs' sale

contract was "[a]n express contract govern[ing] . . . purchase of [plaintiffs'] boat, and no implied

or quasi-contract will be found where an express contract exists").

## VI.   PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED

Plaintiffs attempt to plead ten civil RICO claims against LG, five under the federal RICO

statute, and five under New Jersey's corresponding RICO statute based on the same predicate

acts and pattern of racketeering activity as those alleged in their federal RICO claims.  Because

New Jersey RICO claims are subject to the same standards of proof and the same analysis as

federal RICO claims, these claims will be analyzed together.  See Cetel v. Commw. Life Ins.

Co., 460 F.3d 494, 510 (3d Cir. 2006) ("[T]he New Jersey Supreme Court believed the New

Jersey RICO statute was and should be consistent with the federal RICO statute.").  In eight of

these claims, Plaintiffs allege that either LG Korea or LG USA, or both, violated 18 U.S.C.

§ 1962(c), which prohibits a person who is employed by or associated with an enterprise from

conducting the enterprise's affairs through a pattern of racketeering, and its New Jersey State law

analog, N.J. Stat. Ann. § 2C:41-2(c).  In the other two, Plaintiffs allege that LG Korea and LG

USA both violated 18 U.S.C. § 1962(d), which prohibits a person from conspiring to violate the

other subsections of § 1962, and its New Jersey State law analog, N.J. Stat. Ann. § 2C:41-2(d).

The RICO claims have "three common elements: '(1) a person who engages in (2) a

pattern of racketeering activity, (3) connected to the . . . conduct, or control of an enterprise.'"

E.g., St. Germain v. Howard, 556 F3d 261, 263 (5th Cir. 2009) (internal quotations and citations

omitted); accord Dare Invs., LLC v. Chicago Title Ins. Co., No. 10-6088 (DRD), 2011 WL

2600594, at *9 (D.N.J. June 29, 2011).  These elements must be pleaded with "'enough facts to

state a claim to relief that is plausible on its face.'"  Brunig v. Clark, 560 F.3d 292, 297 (5th Cir.

2009) (dismissal of a RICO claim for failing to plausibly allege an element of a RICO claim

affirmed) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  Here, Plaintiffs

have failed to allege facts sufficient to demonstrate an "enterprise," or any predicate acts of

"racketeering."  Plaintiffs have also failed to allege facts sufficient to demonstrate that their

purported injuries were proximately caused by LG's supposed RICO violations.  For these

reasons, all of Plaintiffs' civil RICO claims should be dismissed.  Separately, Plaintiffs' request

for equitable relief should be dismissed as no such relief is available in private civil RICO

actions.  Last, Plaintiff ADK's RICO claims are time-barred.

**A.**     **Plaintiffs Fail to Allege the Existence of a RICO Enterprise.**

Plaintiffs in each of their first four federal RICO claims and first four corresponding New

Jersey RICO claims allege that there are four different RICO enterprises:  (1) LG USA (Counts 1

and 6), (2) LG AL (Counts 2 and 7), (3) a purported association-in-fact of LG Korea, LG USA,

and LG AL (Counts 3 and 8), and (4) an independent network of associated licensed distributors,

sales agents, and servicers (Counts 4 and 9).  The facts they have pleaded, however, do not

support their allegation that any of these is a RICO enterprise.

The first three alleged RICO enterprises, LG Korea, LG USA, and the purported

association-in-fact of LG Korea, LG USA, and LG AL, are not distinct from LG for purposes of

RICO and therefore cannot serve as a RICO enterprise.  See Whelan v. Winchester Prod. Co.,

319 F.3d 225, 229 (5th Cir. 2003) (for purposes of 1962(c), the "plaintiff must demonstrate . . .

that the RICO 'person' . . . is distinct from the enterprise.").  Plaintiffs suggest that because LG

Korea and LG USA have maintained their legal separateness as a parent and subsidiary, they

should be considered distinct for RICO purposes.  (Compl. ¶ 7.)  Plaintiffs, however, are

conflating two separate standards.  Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d

Cir.1996) (explaining that "[i]t would be inconsistent for a RICO person, acting within the scope

of its authority, to be subject to liability simply because it is separately incorporated, whereas

otherwise it would not be held liable"), rev'd on other grounds, 525 U.S. 128 (1998).  The

standard for whether a RICO person is distinct from a RICO enterprise is not the same as the

standard for determining whether a parent corporation may be served with a third-party subpoena

through a subsidiary, which was the issue in Power Integrations, Inc. v. Fairchild Semiconductor

Int'l, Inc., 233 F.R.D. 143 (D. Del. 2005), the case cited by Plaintiffs.[9]  Parent corporations and

their subsidiaries are usually separate corporate entities, but a parent and its subsidiary cannot

serve as the distinct person and enterprise required under § 1962(c) unless the subsidiary is

alleged to have done something "beyond carrying out the regular business" of the parent.

ISystems v. Spark Networks, Ltd., No. 10-10905, 2012 WL 3101672, at *5 (5th Cir. Mar. 21,

2012); accord Khurana v. Innovative Health Care Sys., 130 F.3d 143, 155 (5th Cir. 1997) ("the

distinctiveness requirement is not satisfied by pleading a subsidiary corporation or affiliated

entity as perpetrator-defendant if the parent corporation and the subsidiary's roles in the alleged

racketeering activities are not sufficiently distinct"), vacated on other grounds by Teel v.

Khurana, 525 U.S. 494 (1998); North Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare,

Civ. A. No. 4:09-cv-2556, 2011 WL 5325785, at *7 (S.D. Tex. Nov. 3, 2011) ("[A] plaintiff

cannot meet the distinctiveness requirement by simply alleging that the RICO parent company is

a RICO 'person' and the subsidiary is the RICO 'enterprise.'").

 Here, there is no dispute as to the corporate relationship of the LG entities identified in

the Complaint.  LG Korea wholly owns LG USA, who in turn wholly owns LG AL.  (Compl.

¶ 6.)  They are all members of the same corporate structure and are alleged to have done nothing

more than carry out the regular business of that structure, i.e., they are alleged to have "mailed

---

[9] Plaintiffs claim in footnote 4 of the Complaint to attach a copy of the order and affidavit
from Cottage Builders, Inc. v. LG Elec. U.S.A., Inc., Case NO. CV-2011-903505 (Cir. Ct.
Jefferson County, AL) in Exhibit 3, but no such affidavit or order is found in Exhibit 3.

uniform marketing brochures," maintained an "internet-based" portal for distributors to place

orders, placed "orders with LG Korea," sent invoices, accepted payments, provided guidebooks

to their "licensed servicers," discussed the existence of the purported defects and "how to handle

them," "creat[ed] and implement[ed]" corporate policy, and "mail[ed] and electronically

transmitt[ed] marketing materials and advertisements." (Id. ¶ 77.)  This is nothing more than you

would expect of any manufacturer attempting to sell its goods.  Thus, none of them – not LG

Korea, LG USA, nor LG AL – can be considered a distinct "person" from that corporate

"enterprise."  Nor can the association of these entities form the basis for a distinct RICO

enterprise.  See Shields v. UnumProvident Corp., 415 F. App'x 686, 691 (6th Cir. 2011)

(plaintiffs "fail[ed] to adequately plead the existence of an association in fact RICO enterprise"

because a corporation cannot be "liable under § 1962(c) for participating in the affairs of an

enterprise that consists only of its own subsidiaries, agents, or members"); Fitzgerald v. Chrysler

Corp., 116 F.3d 225, 226 (7th Cir. 1997) (affirming dismissal of consumer class action for

warranty fraud brought under RICO for failure to plead a RICO enterprise allegedly "consisting

of subsidiaries of the Chrysler Corporation engaged in various facets of production, financing,

and marketing of Chrysler automobiles, plus [others]").

     The fourth alleged RICO enterprise, the independent network of associated licensed

distributors, sales agents, and servicers (the "Purported Sales and Service Enterprise") cannot

serve as the RICO enterprise either because Plaintiffs have failed to allege that LG Korea and LG

USA "conduct[ed] and participate[d]" in that purported enterprise's affairs.  Reves v. Ernst &

Young, 507 U.S. 170, 183 (1993).  "[C]onduct and participation" in the affairs of an enterprise

requires a showing that the defendant "participated in the operation or management of the

enterprise itself."  Id.  Plaintiffs' allegations of LG Korea and LG USA's conduct and

participation in the Purported Sales and Service Enterprise fall short of the operation and

management standard.[10]   All of Plaintiffs' allegations of conduct and participation relate solely to

the products themselves, such as LG Korea's design and manufacture of the products, LG USA's

importation of the products, LG Korea's drafting of the warranty documents, and LG Korea and

LG USA's alleged decisions after defects were identified.  (Compl. ¶ 111).  None of these

allegations, or any other allegations in the Complaint, however, indicate any way in which LG

Korea and LG USA participated in the operation or management of the licensed distributors,

sales agents, and servicers.  Reves, 507 U.S. at 185 (Defendant must conduct or participate in the

conduct of "the 'enterprise's affairs,' not just their own affairs") (emphasis in original).

Accordingly, because Plaintiffs have failed to plead facts that demonstrate the existence

of a RICO enterprise separate and distinct from either LG Korea or LG USA, all of its RICO

claims fail and must be dismissed.

### B.       Plaintiffs Fail to Allege Predicate Acts of Racketeering.

To satisfy the pattern of racketeering element of their RICO claims, Plaintiffs point to the

same purportedly false advertisements and omissions that form the basis of their consumer fraud

claims.  Plaintiffs claim that LGE's dissemination of these advertisements and purported

implementation of an unspecified "uniform nondisclosure policy" are violations of mail and wire

---

[10]   Similarly, under New Jersey law, a plaintiff must at least show that the defendant "has a position or a functional connection with the enterprise," meaning to act "purposefully and knowingly in the affairs of the enterprise in the sense of engaging in activities that seek to further, assist or help effectuate the goals of the enterprise."  Tedeschi v. Smith, No. 09-03134 (JAP), 2010 WL 148424, at *5 (D.N.J. Jan. 12, 2010) (internal quotations and citations omitted).  Here, Plaintiffs' allegations of LG Korea and LG USA's conduct and participation in the Purported Sales and Service Enterprise consist solely of actions by LG Korea and LG USA to conduct their own businesses.  (Compl. ¶¶ 110-111).  Plaintiffs have made no allegations that LG Korea and LG USA acted to purposefully or knowingly further, assist, or help effectuate the goals of the Purported Sales and Service Enterprise.  At most, Plaintiffs' allegations show LG Korea and LG USA may have incidentally impacted the purported Sales and Service Enterprise, but this is not sufficient to meet New Jersey's requirement of purposeful or knowing action.

fraud statutes (18 U.S.C. §§ 1341 & 1343) that constitute a pattern of racketeering activity under the federal and New Jersey RICO statutes.  (Compl. ¶¶ 76-83 and Counts 1-10.)  As with their claims of consumer fraud, these claims fail as predicate acts of racketeering because Plaintiffs have not alleged any of LG's purportedly fraudulent misrepresentations and omissions with the specificity required by Rule 9(b) and, more importantly, they allege no material misrepresentations of fact.

To allege mail and wire fraud, Plaintiffs must plead facts that demonstrate: "1) a scheme to defraud by means of false or fraudulent representation, 2) interstate or intrastate use of the mails to execute the scheme, 3) the use of the mails by the defendant connected with scheme, and 4) actual injury to the plaintiff."  In re Burzynski, 989 F.2d 733 (5th Cir. 1993).  "To invoke mail or wire fraud, a plaintiff must articulate some 'false or fraudulent misrepresentation.'"  Joe N. Pratt Ins. v. Doane, 2008 WL 819011, at *4 (S.D. Tex. Mar. 20, 2008) (quoting In re MasterCard Int'l Inc., 313 F.3d 257, 263 (5th Cir. 2002)).  Rule 9(b)'s heightened standards apply equally to Plaintiffs' RICO claims, which are predicated on mail and wire fraud, as they do to their consumer fraud claims.  See  SHS Inv. v. Nationwide Mut. Ins. Co., 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011) ("Because 'Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not,' it applies to statutory claims based on allegations of fraud." (quoting Lone Star Ladies Inv. Club v. Schlotzky's, Inc., 238 F.3d 363, 368 (5th Cir. 2001))).

Here, Plaintiffs fail to plead the predicate acts of wire and mail fraud with the required specificity.  To state a claim under the RICO statute, Plaintiffs must describe the time, place, and content of the mail and wire communications, and they must identify the parties to these communications.  See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1138 (5th Cir.

1992) (applying Rule 9(b) to wire and mail fraud predicate act allegations).  As explained in section VI.B., supra, Plaintiffs have not alleged the purported predicate acts with the requisite specificity.

Moreover, Plaintiffs' mail and wire fraud claims fail substantively because, as discussed in section II.A., supra, Plaintiffs have not identified an actionable misrepresentation.  See MasterCard Int'l, Inc., 313 F.3d at 263 (a "particularly compelling" reason to dismiss a RICO claim is because the plaintiff does not "show that the Defendant[] made a false or fraudulent representation"); Paul v. Aviva Life & Annuity Co., 2011 WL 2713649, at *4 (N.D. Tex. July 12, 2011) (RICO claims dismissed for failure to allege predicate acts of wire and mail fraud where plaintiffs did not allege why defendant's representations "were false when made, as required by Rule 9(b)"), aff'd, 487 F. App'x 924 (5th Cir. 2012); see also, Am. Dental Assoc. v. Cigna Corp., 605 F.3d 1283, 1292-1293 (11th Cir. 2010) (dismissal of RICO claims affirmed where alleged misrepresentations in defendant's advertisements amounted to "puffery, not fraud").  At bottom, Plaintiffs are trying to manufacture wire and mail fraud claims on the back of generalized advertisements and product specification guides that they do not allege they saw or received.  Plaintiffs' allegations do not comport with Rule 9(b) and should therefore be dismissed.

Plaintiffs also contend that LG fraudulently omitted information regarding alleged defects in air conditioner units.  (Compl. ¶¶ 60-61).  To pursue claims based on such an omission, Plaintiffs must allege facts demonstrating that LG had a duty to disclose these alleged defects for such omissions to form the basis of a mail or wire fraud claim or a consumer fraud claim.  As explained in section II.B., supra, this they have not done and cannot do.  Non-disclosure only rises to the level of mail or wire fraud "where a defendant has a duty to disclose."  Am. United

Life Ins. Co. v. Martinez, 480 F.3d 1043, 1065 (11th Cir. 2004) (internal quotations and citations

omitted); accord Carrol v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006) ("[O]ne who

fails to disclose material information . . . commits fraud only when he is under a duty to do so.")

(quotation marks omitted) (quoting Chiarella v. United States, 445 U.S. 222, 227-28 (1980)).

 Plaintiffs attempt to manufacture a duty to disclose the alleged defects by pointing to

LG's Code of Conduct.  (Compl. ¶ 56-58).  As explained in section II.B., supra, however,

Plaintiffs offer no basis for their contention that LG's internal guide imposes a duty on LG with

respect to Plaintiffs or any other consumers.  LG's Code of Conduct does not define the

responsibilities of LG vis-à-vis Plaintiffs or any other consumer.  To the contrary, the Code

makes clear that it "does not create any contractual rights or obligations."  (Compl., Ex. 13, p. 9).

LG's adoption of the Code of Conduct has no bearing on this suit and certainly does not provide

grounds for Plaintiffs' consumer fraud or RICO claims.

 Further, to the extent that Plaintiffs generalized allegations of LG's ordinary business

activities related to selling manufactured goods (e.g., Compl. ¶¶ 76, 77, 88) could be considered

predicate acts of racketeering, they also fall short of Rule 9(b)'s requirements.  See In re All

Terrain Vehicle Litig., 978 F.2d 1265, 1992 WL 332105 (9th Cir. Nov. 10, 1992), aff'd in part,

979 F.2d 755 (9th Cir. 1992).  In In re All Terrain Vehicle Litigation, on facts similar to those

alleged here relating to the sale of allegedly defective ATVs, the Ninth Circuit explained that

"[t]he complaint contains only imprecise and vague assertions regarding defendants' role in an

'integrated and concerted mass media campaign' without discernible boundaries.  In a case

involving the acts of eleven corporations and a trade association over a period of at least eight

years, a handful of examples combined with allegations that *every* sale and *every* use of the term

ATV was fraudulent did not provide defendants with sufficient information about their allegedly

fraudulent marketing campaigns to permit defendants to answer the charges." Id. at *2.  The

same is true here of Plaintiffs' "imprecise and vague assertions" regarding LG's efforts to sell air

conditioners.

Finally, to the extent Plaintiffs suggest that they should be excused from complying with

the requirements of Rule 9(b) until after they have had an opportunity to take discovery (e.g.,

Compl. ¶¶ 81, 82 ("Greater detail . . . will be revealed during discovery")), their suggestion is

misplaced.  As discussed earlier, (supra II.A.(2)), a plaintiff pleading fraud must set forth the

"'who, what, when, and where . . . before access to the discovery process is granted.'"  ABC

Arbitrage, 291 F.3d at 349 (quoting Williams v. WMX Techs., Inc., 112 F.3d 175, 178 (5th Cir.

1997)).

Accordingly, because Plaintiffs have failed to plead the requisite predicate acts of

racketeering, their RICO claims must be dismissed.

### C.   Plaintiffs Fail to Allege That Their Purported Injuries Were Directly or Proximately Caused by LG's Representations

Plaintiffs' RICO claims also fail because they do not allege that they purchased their LG

air conditioning units as a direct and proximate result of LG's purported mail and wire fraud.

RICO's standing provision, 18 U.S.C. § 1964(c), requires that a plaintiff be injured "by reason

of" a defendant's violation of Section 1962(c).  18 U.S.C. § 1964(c).  The alleged RICO conduct

must be the "but for" and proximate cause of the injury for plaintiff to have suffered the requisite

injury to have standing.  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 271 (1992)

("[S]ome direct relation between the injury asserted and the injurious conduct alleged" is

required; a link that is "too remote" or "purely contingent" is insufficient.); Whalen v. Carter,

954 F.2d 1087, 1091 (5th Cir. 1992) (plaintiff must show that "the defendants' predicate acts

constitute both a factual and proximate cause of the plaintiff's alleged injury" to have standing to

bring a RICO action.).  Although proximate cause is a flexible concept that does not lend itself to a "black-letter rule that will dictate the result in every case," Holmes, 503 U.S. at 272 n.20, there generally must be "some direct relation between the injury asserted and the injurious conduct alleged," Id. at 259.  "[T]he central question [the court] must ask is whether the alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006) (RICO claim dismissed because the causal connection between the alleged RICO violation and plaintiff's injuries was too attenuated).

Although, for RICO claims based on mail fraud, plaintiffs "need not show . . . that it relied on the defendant's alleged misrepresentations," Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 661 (2008), "in most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." Id. at 658.  In making the proximate cause determination, courts consider whether parties other than plaintiffs were harmed, and whether the presence of such intermediate parties would make it difficult to calculate damages for the particular plaintiff.  See Treadway v. Lisotta, No. 08-1375, 2008 WL 3850462, at *4 (E.D. La. Aug. 15, 2008) (citing Holmes, 503 U.S. 258, 268-70 (1985)); see also In re Taxable Mun. Bond Sec. Litig., 51 F.3d 518, 523 (5th Cir. 1995) (dismissal of RICO claim affirmed, finding "the alleged injury is speculative and does not show a conclusive financial loss").  Plaintiffs do not allege that they relied on LG's purportedly fraudulent advertisements and omissions in deciding to purchase an LG air conditioner.  Indeed, the closest they come to such a contention is an allegation that their injuries were sustained "by reason of" LG's purported RICO violation. (Compl. ¶¶ 118, 159).  They do not claim to have ever seen any of the alleged misrepresentations, let alone to have made a decision to purchase their air conditioners based on any of them.

Plaintiffs attempt to overcome this shortcoming by claiming that the distributors who received LG's advertisements and promotional materials "must" have relied upon them when marketing LG's products.  (Compl. ¶ 77).  But, as discussed in section II.A.(4), supra, this is merely a conclusory pleading of reliance which is insufficient under Twombly.  Cf. Hitch Enters., Inc. v. Cimarex Energy Co., 859 F. Supp. 2d 1249, 1261 (W.D. Okla. 2012 ) (fraud claim dismissed because their "allegation of reliance [was] conclusory and lacking factual specificity").  Because Plaintiffs fail to allege facts showing a direct and proximate causal relationship between Plaintiffs' injuries and LG's purported fraudulent scheme, Plaintiffs' RICO claims should be dismissed.

### D.  Plaintiffs' RICO Conspiracy Claim Fails In the Absence of an Actionable RICO Claim.

Because Plaintiffs have failed to allege an actionable substantive RICO violation, their RICO conspiracy claim also fails as a matter of law.  See Paul, 2011 WL 2713649, at *4 (dismissing RICO conspiracy claim because "a RICO conspiracy claim must fail if there is no underlying RICO claim to support the conspiracy").

### E.  Plaintiffs' Requested Equitable Relief Is Not Permitted in a Civil RICO Suit

Plaintiffs invoke the federal RICO statute's equitable jurisdictional grant under 18 U.S.C. § 1964(a) to request extravagant forms of relief, including "disgorgement of LG Korea and LG USA's gross proceeds from the sales of the Defective Products" and "[d]ivesting LG Korea of ownership in any entity that conducts business in the United States."  (Compl. at 70, Prayer for Relief ¶ 3.)  Fifth Circuit precedent does not authorize this form of relief to private plaintiffs asserting civil RICO claims.  See Richard v. Hoechst Celanese Chem. Group, Inc., 355 F.3d 345, 354 (5th Cir. 2003) ("This Court has not decided whether equitable relief is available to a private civil RICO plaintiff."); see also Bolin v. Sears Roebuck & Co., 231 F.3d 970, 977 n.42 (5th Cir.

2000) ("There is considerable doubt that injunctive relief is available to private plaintiffs under RICO."); In re Fredeman Litig., 843 F.2d 821, 830 (5th Cir. 1988) ("Congress indeed had several opportunities to give express authorization to private injunctive actions but chose not to do so, apparently because it hesitated in the face of the ramifications of that remedy").  And one federal circuit that directly addressed the issue has held that RICO does not allow private injunctive relief, see, e.g., Religious Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1089 (9th Cir. 1986) ("[W]hile, on balance, it may well have been desirable for Congress to have extended to private parties the right to injunctive relief under civil RICO, we are convinced that Congress chose not to do so, and we must respect and follow that judgment."), which decision the Fifth Circuit has cited with approval.  See In re Fredeman Litig., 843 F.2d at 830 ("We find the analysis contained in the Wollersheim opinion persuasive.").

Second, even assuming that a private civil RICO plaintiff could obtain equitable relief, the Fifth Circuit has expressly held that "Section 1964(a) establishes that equitable remedies are available only to prevent ongoing and future conduct."  Richard, 355 F.3d at 355; see also Bullock v. Abbott & Ross Credit Servs., LLC, 2009 U.S. Dist. LEXIS 112265, at *16-17 (W.D. Tex. Dec. 3, 2009) ("Because compensating past injuries is not a proper remedy under § 1964(a), the Court declines to award Plaintiff equitable relief in this case under § 1964(a).").  Here, Plaintiffs' requested relief targets only past injuries, not future misconduct.  (Compl. at 71, Prayer for Relief ¶ 3 (requesting injunction "[r]equiring the defendants to conduct a systematic recall of all LG brand HVAC equipment sold in the United States since 2007").)  Indeed, § 1964(a) forecloses even injunctions ostensibly targeting future activities, where the relief is predicated upon remedying the effects of past misconduct.  See Richard, 355 F.3d 345, 354-55 (5th Cir. 2003) (Court agreed with Second Circuit that § 1964(a) bars relief "when disgorgement

is sought for the purpose of compensating a party for past injuries."). Accordingly, Plaintiffs are precluded from recovering their requested injunctive remedies under the civil RICO statute.

### F.      Plaintiff ADK's RICO Claims Are Barred by the Statute of Limitations

The four-year statute of limitations for civil RICO claims accrues upon discovery of the injury. Rotella v. Wood, 528 U.S. 549 (2000) (Court held that a civil RICO claim accrues upon discovery of the injury alone); see also Boulmay v. Rampart 920, Inc., 124 F. App'x 889, 891 (5th Cir. 2005) (dismissal of RICO claims affirmed, finding the claims time-barred because the limitations period ran from "when a plaintiff knew or should have known of his injury." (citing Rotella, 528 U.S. at 553-54 (2000))); accord Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 511 (3d Cir. 2006). Plaintiff ADK has been aware of purported problems with its air conditioner since 2007 (Compl. ¶ 2), which is more than four years before this action was commenced in 2012. Accordingly, ADK's RICO claims should be dismissed

Although Plaintiffs suggest that the "discovery rule" and alleged "fraudulent concealment" by LG should toll the statute of limitations (Compl. ¶¶ 63, 64), "fraudulent concealment does not toll beyond [the point when plaintiff knew or should have known of his injury]." DeShazo v. Nations Energy Co., 286 F. App'x 110, 116 (5th Cir. 2008); accord Lee v. Karriker, No. 6:08cv328, 2009 WL 2590093, at *3 (E.D. Tex. 2009) ("The doctrine of fraudulent concealment requires that the injured party exercise due diligence, and the limitations period accrues when the party knows or should have known of the injury."). Further, the "connection between civil RICO and fraud [has long been found to be] an insufficient ground for recognizing a limitations period beyond four years." Bradley v. Phillips Petroleum Co., 527 F. Supp. 2d 625, 653 (S.D. Tex. 2007) (citing Rotella, 528 U.S. at 557), aff'd, 337 F. App'x 397 (5th Cir. 2009). ADK admits that it knew of its purported injuries in 2007 (Compl. ¶ 2), and therefore there is no equitable tolling here. ADK's RICO claims are time-barred.

## VII.   NO FURTHER LEAVE TO AMEND SHOULD BE GRANTED

Plaintiffs have now filed three complaints and have had ample opportunity to properly plead claims under applicable law.  Even having had the benefit of reviewing two prior motions to dismiss, Plaintiffs have still failed to state a single claim upon which relief may be granted. There is no basis to pursue any claims under the law of New Jersey.  Under these circumstances Plaintiffs should not be permitted a fourth bite at the apple, and dismissal should be with prejudice.  Plaintiffs have demonstrated "repeated failures to cure deficiencies by amendments previously allowed," <u>Muttathottil v. Mansfield</u>, 381 F. App'x 454, 457 (5th Cir. 2010) (citations omitted), and it would be unduly prejudicial to LG to allow Plaintiffs to amend again.  <u>Id</u>.   No further amendments should be permitted.  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct 227, 230 (1962) ("repeated failure to cure deficiencies by amendments previously allowed" justifies dismissal with prejudice).

## CONCLUSION

For the reasons discussed above, Plaintiffs' Complaint fails to state a claim for relief and should be dismissed.

DATED: April 5, 2013.

Respectfully submitted,

*/s/ Phoebe A. Wilkinson*

Phoebe A. Wilkinson *(admitted pro hac vice)*
Michael S. Davi
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
Phone: 212-408-5100
Facsimile: 212-541-5369

***COUNSEL FOR LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC.***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ST. GREGORY CATHEDRAL SCHOOL;<br>ADK QUARTER MOON, LLC; LEXMI<br>HOSPITALITY, LLC; and SHRI BALAJI,<br>LLC on behalf of themselves and all others<br>similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Case No. 6:12-CV-739 |
| | : | |
| v. | : | |
| | : | |
| LG ELECTRONICS, INC., a South Korean<br>corporation, and LG ELECTRONICS U.S.A.,<br>INC., a Delaware corporation, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed **LG ELECTRONICS U.S.A., INC.'S AND LG ELECTRONICS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND TO STRIKE CLASS ALLEGATIONS** with the clerk of court for the United States District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Dated: April 5, 2013                    /s/ *Phoebe A. Wilkinson*
                                        **Phoebe A. Wilkinson**