# United States District Court
### FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| ST. GREGORY CATHEDRAL SCHOOL, ET AL. | § § § § § § | Case No. 6:12-cv-739 |
| v. | | |
| LG ELECTRONICS, INC., ET AL. | | |

## MEMORANDUM ORDER AND OPINION

Currently before the Court is Defendants LG Electronics, Inc. and LG USA, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 61). In this class action lawsuit, Plaintiffs assert federal and state law causes of action. The federal causes of action all arise under RICO. The state causes of action are all brought under New Jersey law. Defendants urge this Court to find no RICO enterprise exists and that either New Jersey law does not apply or does not support Plaintiffs' claims. After considering the parties' arguments, the applicable law, and the facts as pleaded, the Court is of the opinion Defendants' motion should be **GRANTED**.

## Background[1]

Defendant LG Electronics, Inc. (LG Korea) designs and manufactures heating, ventilation, and air conditioning units (HVACs) in Korea, and then enlists its wholly owned subsidiary, Defendant LG Electronics U.S.A., Inc. (LG USA), to market and sell those HVACs

---

[1] All statements are taken from the allegations made in Plaintiffs' Second Amended Complaint (Plaintiffs' complaint) (Doc. No. 35).

through licensed distributors in the United States. LG USA uses a wholly owned subsidiary, LG Alabama, Inc. (LG AL), to provide service and support to purchasers.[2]

Plaintiffs allege that LG Korea initiated a conspiracy to conceal defects common to all LG HVACs manufactured and sold between 2007 and 2011. LG Korea first learned of defects in its HVACs in 2007 after an internal report indicated 179 out of 2,911,639 units failed due an issue with the thermistor. LG Korea also discovered issues with fan motors, PC boards, coils, compressors, and source code across various HVAC product lines. LG Korea did not disclose these issues to LG USA and LG AL until 2009.

During the time period relevant to this suit, LG USA provided uniform marketing materials to its licensed distributors utilizing specifications LG Korea supplied. The marketing materials for LG HVACs contained representations about the quality of the units, such as their energy usage, noise level, fan speed, and durability. Plaintiffs allege that these representations were uniformly false. In late 2010, LG USA directed its licensed distributors to account for and "quarantine" certain models still in the distributors' warehouses. LG USA directed the distributors to not disclose the defects to customers already in possession of defective models.

LG Korea also provided customer service, technical support, and troubleshooting information to LG AL. These materials did not disclose issues with LG HVACs, which prevented warranty claims.

The Named Plaintiffs are four entities located in Texas and North Carolina that purchased LG HVACs. Plaintiff St. Gregory Cathedral School (St. Gregory) is a private school in Tyler, Texas that purchased twelve units from a licensed distributor. Plaintiffs ADK Quarter Moon, LLC (ADK), Lexmi Hospitality, LLC (Lexmi), and Shri Balaji, LLC (Shri Balaji) are North

---

[2] LG Korea is incorporated and headquartered in Korea, LG USA is incorporated under the laws of Delaware, but has its principal place of business in New Jersey, and LG AL is both incorporated and headquartered in Alabama.

Carolina entities that own hotels and motels in North Carolina and bought units from licensed distributors. The Named Plaintiffs purchased units from four different product lines over a three-year period. They claim that their LG HVACs, and all other LG HVACs manufactured between 2007 and 2011, failed to perform as LG represented.

### **Legal Standard**

Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id*. (quotations and citations omitted). In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### **Discussion**

**A. RICO**

Plaintiffs allege five violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* Four are brought under § 1962(c) of title 18, which prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering activity. *See*

*Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). The fifth is brought under § 1962(d) of title 18, which prohibits a person from conspiring to violate any other section of § 1962. Plaintiffs also allege similar violations of New Jersey's RICO statutes.

Defendants contend that Plaintiffs' first four RICO claims fail because they have not alleged a RICO enterprise. Because they maintain that the first four claims fail, Defendants argue that Plaintiffs' § 1962(d) claim must, too, because no underlying RICO claim exists that could support a conspiracy to violate RICO. Defendants also argue that Plaintiffs' New Jersey RICO claims fail for the same reason as the Federal RICO claims.

  i. **§ 1962(c)**

A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise must be distinct from the defendant serving as the RICO person. *Atkinson v. Anadarko Bank and Trust Co.,* 808 F.2d 438, 439 (5th Cir. 1987). Under § 1962(c), no RICO enterprise exists where a subsidiary merely acts on behalf of, or to the benefit of, its parent. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993); *accord ISystems v. Spark Network Ltd.*, No. 10-10905, 2012 WL 3101672, at *4–5 (5th Cir. Mar. 21, 2012). Further, no RICO enterprise exists where a corporation's agents commit predicate acts in the conduct of the corporation's business. *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989). These general rules control unless the use of subsidiaries or agents somehow allowed a corporation to carryout the predicate acts in a way it could not have if it were vertically integrated. *See Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 934 (7th Cir. 2003); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227–28 (7th Cir. 1997).

Plaintiffs' complaint fails to set forth well pleaded facts that could establish how LG's use of subsidiaries and licensed distributors allowed it to accomplish its purported fraud. Plaintiffs come closest to alleging sufficiently distinct roles between LG Korea, LG USA, LG AL, and their licensed distributors with one allegation: LG Korea had more information about the defects of various components in LG HVACs than any other entity at various points in time and kept the downstream entities in the dark (¶¶ 25–33). Plaintiffs conclude that the asymmetry in knowledge between the LG entities allowed varying combinations of entities to use the less informed entities to cover up defects in LG HVACs (¶¶ 38–39, 42–43, 47–50).

But everything Plaintiffs allege could have taken place if LG operated as one company that manufactured, sold, and serviced its HVACs. What is more, Plaintiffs do not allege any facts that show how the asymmetrical knowledge of corporate entities and agents allowed LG to carry out its fraud. Instead, Plaintiffs supply only a conclusion that the asymmetry in knowledge did (Doc. No. 35 at ¶¶ 37, 46–47).

As alleged, neither LG's entities nor its agents were exploited in such a way to trigger RICO liability. Indulging all reasonable inferences, LG entities and licensed distributors carried out their role in making, testing, marketing, selling, and servicing LG HVACs. For two years, the marketing, selling, and servicing arms of LG's operation relied on false information supplied by the manufacturing arm even after that manufacturing arm discovered defects existed in the HVACs. Once the manufacturing arm admitted the defects, it brought everyone in, and then LG—collectively—attempted to staunch the fallout. In view of those allegations, "[w]hat possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make that [a manufacturer] sells its products to the consumer through [licensed] dealers . . . or sells abroad through subsidiaries?" *See id.* at 227. The answer is that it does not

because RICO is not aimed at punishing corporate structure. RICO is aimed at preventing organized crime from infiltrating legitimate businesses. *See United States v. Turkette*, 452 U.S. 576, 593 (1981).

Culling a distinct RICO enterprise out of a corporate structure like LG's requires more than what Plaintiffs have alleged:

> Just how much more is uncertain. But it is enough to decide this case that *where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way*, so that their role in the manufacturer's illegal acts is entirely incidental, *differing not at all from what it would be if these agents were the employees of a totally integrated enterprise*, the manufacturer plus its dealers and other agents (*or any subset of the members of the corporate family*) do not constitute an enterprise within the meaning of the statute.

*See Fitzgerald*, 116 F.3d at 228 (emphasis added).

Therefore, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiffs' § 1962(c) claims.

### ii. § 1962(d)

Having determined that Plaintiffs failed to allege an independent violation of § 1962, Plaintiffs cannot maintain a claim under § 1962(d). *See Paul v. Aviva Life & Annuity Co.*, 3:09-cv-1490-B, 2011 WL 2713649, at *4 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing § 1962(d) claim after dismissing all other RICO claims for lack of RICO enterprise).

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' § 1962(d) claim.

### iii. New Jersey RICO

Although Defendants contend that Plaintiffs' New Jersey RICO claims should be dismissed if the federal RICO claims fall, New Jersey law does not support Defendants' position.

Two intermediate New Jersey appellate courts have explicitly held that New Jersey's RICO statute does not require a distinct person and enterprise. *See State v. Ball*, 632 A.3d 1222, 1239 (N.J. Super. Ct. App. Div. 1993); *Maxim Sewerage Corp v. Monmouth Ridings*, 640 A.2d 1216, 1221 (N.J. Super Ct. Ch. Div. 1993). As Defendants' note, the New Jersey Supreme Court later declined to endorse one of those intermediate appellate court's "very broad definition of enterprise," while noting that it would generally "heed federal legislative history and case law in construing [New Jersey's] statute." *State v. Ball*, 661 A.2d 251, 258, 271 (N.J. 1995). But the vast majority of courts construing New Jersey's RICO statute conclude it imposes no distinctiveness requirement. *See, e.g.*, *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 532–33 & n.47 (S.D. N.Y. 2011) (collecting cases). Thus, the RICO person and the RICO enterprise may be one and the same under New Jersey law.

But an enterprise satisfies only one element of a viable RICO claim. With regards to the Defendants' predicate acts, Plaintiffs allege only that the LG enterprises engaged in mail and wire fraud by transmitting marketing materials containing false representations. Each alleged predicate act relies solely on a violation of federal law (Doc. No. 35 at ¶¶ 76–77, 130, 138, 145, 152, 158).

To plead mail fraud, Federal Rule of Civil Procedure 9(b) requires a plaintiff to state the time, place, and content of the fraudulent mail and wire communications with particularity. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138–39 (5th Cir. 1992). Plaintiffs contend they have done so by identifying several marketing statements disseminated over several years that were fraudulent when made (Doc. No. 77 at 5–7, 22 & n.6).

Plaintiffs claim that "[d]espite knowing of [ ] product defects since at least 2007, LG Korea . . . supplied LG USA with product specifications and uniform advertising literature" that were fraudulent (Doc. No. 35 at ¶ 37). But Plaintiffs' factual allegations undercut their argument.

The defects Plaintiffs allege LG Korea knew of are defects in certain product lines discovered in a piecemeal fashion over four years (Doc. No. 35 at ¶¶ 25–33). And according to the technical service bulletins Plaintiffs rely on to bolster their claims, defects existed only on a limited numbers of models within LG's various product lines (Doc. Nos. 35-14, 35-15, 35-16, 35-17, 35-18, 35-19). The same technical service bulletins indicate that LG discovered the existence of defects after those models were initially marketed. (Doc. Nos. 35 at ¶¶ 25–33, 35-14, 35-15, 35-16, 35-17, 35-18, 35-19). Plaintiffs also allege that LG modified defective parts in later models, conducted field tests, discovered, and diagnosed issues *post hac* (Doc. No. 35 at ¶¶ 26, 28, 30–31). Thus, instead of pleading mail fraud with particularity, Plaintiffs' factual allegations state with particularity that LG investigated its products, discovered issues after-the-fact, and developed solutions to those problems. Those allegations are insufficient to plead mail fraud. *See Anctil v. Ally Fin., Inc.*, 2014 WL 587364 at *11–12 (S.D. N.Y. Feb. 10, 2014) (holding mail fraud not pleaded with particularity because no allegations tended to indicate defendants made statements with intent to defaud); *cf. Durso v. Samsung Electronics Am., Inc.*, 2:12-CV-05352, 2013 WL 5947005, at *10 (D. N.J. Nov. 6, 2013) (finding no basis for consumer fraud claims under Rule 9(b) when no factual allegation suggested defendant knew of defect before marketing product).

Finally, while Plaintiffs allege a fraud by omission theory, this Court declines to view technical bulletins as evidence of fraudulent concealment. *Alban v. BMW of N. Am.*, CIV. 09-

5398, 2011 WL 900114, at *12 (D. N.J. Mar. 15, 2011). To do so would "discourage manufacturers from responding to their customers in the first place." *Id.*

Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' New Jersey RICO claims.

**B. State Law Claims**

Plaintiffs allege four non-RICO state law causes of action against LG: (1) a violation of the New Jersey Consumer Fraud Act (NJCFA), (2) breach of express warranty, (3) breach of implied warranty, and (4) unjust enrichment. Each cause of action invokes New Jersey law (Doc. No. 35 at 55–56). Plaintiffs' complaint details which allegations justify applying New Jersey's substantive law (Doc. No. 35 ¶¶ 119–123).

Defendants challenge the application of New Jersey law to Plaintiffs' consumer fraud and express warranty claims. Defendants do not demonstrate a conflict between Texas, North Carolina, and New Jersey law regarding unjust enrichment and implied warranty. Instead, Defendants challenge the substance of those claims. Plaintiffs argue that the Court should not engage in a choice-of-law analysis at the motion to dismiss stage and defend the adequacy of their state law claims as pleaded.

**i. Choice of Law**

Initially, the Court notes that it may properly conduct a choice-of-law analysis at the pleading stage. *See Yelton v. PHI, Inc.*, 669 F.3d 577, 584–85 (5th Cir. 2012); *Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 255 n.5 (3rd Cir. 2010).

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). As this Court sits in Texas, it is obligated to apply Texas choice of law rules. *Burleson v. Liggett Grp., Inc.*, 111 F.

Supp. 2d 825, 828 (E.D. Tex. 2000). Texas courts first determine whether the potentially applicable laws conflict. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000). When a conflict exists, Texas courts use the "most significant relationship test" of Restatement (Second) of Conflict of Laws (the Restatement) to resolve the conflict. *See id.* The Restatement sets out both general principals and claim-specific factors to consider. *See Hughes Wood Prods., Inc. v. Wanger*, 18 S.W.3d 202, 205 (Tex. 2000). Texas courts look to § 148 of the Restatement for consumer fraud claims and to § 188 of the Restatement for contract-based claims. *See Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 293–96 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)

### a. Consumer Fraud Claims

Plaintiffs take no position regarding whether New Jersey, North Carolina, and Texas's law conflict (Doc. No. 77 at 33–35). But Texas courts conclude that the consumer protection statues of the various states conflict. *See Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 354–55 & n.44 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568–69 (1995); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir.2002)). Thus, the Court finds that the substantive laws proposed by the parties conflict.

Plaintiffs allege that LG Korea and LG USA made their false statements about LG HVACs from their respective principal places of businesses, Korea and New Jersey (Doc. No. 35 at ¶¶ 1–4, 37, 51–52, 119, 168–73). Accordingly, the Court looks to the six factor test provided in § 148(2), which applies when fraudulent statements are made, received, and relied in on different forums:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,

> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflicts* § 148(2) (1971).

The Court finds that the Named Plaintiffs' home states possess a stronger connection to the consumer fraud claims than New Jersey. Plaintiffs allege that the Named Plaintiffs acted in reliance on the misrepresentations, received the misrepresentations, do business, possess the HVACs, and rendered performance under their contracts in Texas and North Carolina. (Doc. No. 35 ¶¶ 1–4, 51 n.14). LG USA does business in New Jersey and disseminated LG's marketing materials from New Jersey (Doc. No. 35 at ¶¶ 6, 119, 168–73). LG Korea does business in Korea and transmitted the information incorporated into LG's marketing materials from Korea. (Doc. No. 35 at ¶¶ 6, 37, 51–52, 119, 168–73). Thus, as a matter of wrote application, the factors weigh in favor of the Named Plaintiffs' home states.

Applying the appropriate weight to each factor gives Texas and North Carolina an even greater advantage. First, comment g. to § 148 of the Restatement indicates that the state where the plaintiff relied on the defendant's representations (Texas and North Carolina) is of greater importance than where the defendant made them. *See Tracker*, 108 S.W.3d at 356. Then comment j. indicates that when any two factors (other than the defendant's residence and place where the defendant made the representations) occur in one state, that state "will usually be the state of applicable law." *See id.* As pleaded by the Plaintiffs, four factors implicate Texas and North Carolina (Doc. No. 35 ¶¶ 1–4, 51 n.14). Finally, comment h. undercuts New Jersey's significance by lessening the importance of the place where the defendant made the

representation when more than one forum is implicated, which it is here (Doc. No. 35 at ¶¶ 5–6, 37, 51–52, 119, 168–73). *See Restatement (Second) of Conflict of Laws* § 148 cmt. h. Thus, the Court finds that the Plaintiffs have failed to plead facts that if true give rise to a plausible inference that New Jersey's substantive law governs the consumer law claims.

Therefore, it **GRANTS** Defendant's motion to dismiss as to the NJCFA claims.

### b. Express Warranty

Plaintiffs take no position regarding whether New Jersey, North Carolina, and Texas's law conflict (Doc. No. 77 at 33–35). But Texas courts recognize that the Uniform Commercial Code's express warranty provisions—as adopted by the states—are not uniform. *See Compaq Comps. v. Lampray*, 135 S.W.3d 657, 673–80 (Tex. 2004). Accordingly, the Court finds that the substantive laws proposed by the parties conflict.

In resolving conflicts for express warranty claims, Texas courts look to § 188 of the Restatement, which provides the following factors:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Restatement (Second) of Conflict of Laws* § 188.

The Court finds that these factors overwhelmingly favor the application of Texas and North Carolina law to Named Plaintiffs' express warranty claims. Texas and North Carolina serve as the place of contracting, negotiation, performance, and location of the HVACs (Doc. No. 35 ¶¶ 1–4). New Jersey is only implicated by the fifth factor (the location of the parties), as are Texas, North Carolina, and Korea (Doc. No. 35 ¶¶ 1–6). Thus, the Court finds that on the

basis of the facts as pleaded by Plaintiffs, Texas and North Carolina's substantive law governs the Named Plaintiffs' express warranty claims. *See Compaq*, 135 S.W.3d at 680–81.

Therefore, the Court **GRANTS** Defendants' motion to dismiss as to these claims.[3]

**ii. Implied Warranty**

Defendants argue that no implied warranty claim may lie because LG affirmatively disclaimed implied warranties (Doc. Nos. 61 at 28–29, 61-1, 61-2, 62-3, 62-4). Plaintiffs respond that the disclaimer is not controlling because LG acted unconscionably in crafting the limited warranty while knowing about the defects in their HVAC lines.

New Jersey generally enforces the disclaimer of implied warranties, provided that disclaimer is conspicuous and enforcing the disclaimer would not be unconscionable. *See Stiogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002); N.J.S.A. § 12A:2–316. Plaintiffs do not dispute that the disclaimer was conspicuous (Doc. No. 77 at 31–32). Instead, Plaintiffs argue that enforcing the disclaimer is unconscionable (Doc. No. 77 at 32). New Jersey courts look to two factors to determine whether a contractual provision is unconscionable "(1) unfairness in the formation of the contract, or procedural unconscionability, and (2) excessively disproportionate terms, or substantive unconscionability." *See Payne v. Fujifilm U.S.A., Inc.*, Civil Action No. 07-385, 2007 WL 459128, at *4 (D. N.J. Dec. 28, 2007).

To begin with, the Court notes that Plaintiffs make no specific allegations regarding either unconscionability factor. But Plaintiffs argue that LG concealed defects, implicating the fairness of their contract's formation. The facts Plaintiffs allege belie their argument.

---

[3] The Court notes that the Limited Warranty as to LG's Multi-V VRF System appears to contain a choice of law clause provision (Doc. No. 61-2 at 3 ("The laws of the State of Georgia govern this Limited Warranty and all of its terms and conditions, without giving effect to any principles of conflict of laws.")). Neither party addressed the impact this provision has on Plaintiffs' claims.

As noted above, Plaintiffs allege that LG learned about defects on certain product lines in a piecemeal fashion over a period of four years (Doc. No. 35 at ¶¶ 25–33, 208). That knowledge pertained to a limited numbers of models within LG's various product lines (Doc. Nos. 35-14, 35-15, 35-16, 35-17, 35-18, 35-19). Of the models Plaintiffs allege were defective with anything more than conclusory allegations, none appear to be the models the Named Plaintiffs purchased (Doc. Nos. 35 at ¶¶ 1–4, 25–33, 35-14, 35-15, 35-16, 35-17, 35-18, 35-19).[4] Thus, Plaintiffs' allegations do not provide a plausible inference that LG sold any models *with knowledge of existing defects*.

Also as noted above, this Court declines to view technical bulletins as evidence of fraudulent concealment. *Alban*, 2011 WL 900114, at *12.

Accordingly, the Court finds that Plaintiffs failed to adequately plead facts that if true give rise to a plausible inference of unconscionability, and thus, there is no basis to set aside LG's disclaimer of implied warranties. Therefore, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiffs' breach of implied warranty claim.

### iii. Unjust Enrichment

Defendants move to dismiss Plaintiffs' unjust enrichment claims for lack of privity. New Jersey "requires a 'direct relationship' between the parties or a mistake on the part of the party conferring the benefit." *See Alin v. Am. Honda Motor Co.*, Civil Action No. 08-4825, 2010 WL 1372308, at *14–15 (D. N.J. Mar. 31, 2010).

Plaintiffs failed to plead facts that support their claim for unjust enrichment because they do not allege privity with LG. According to Plaintiffs complaint, the Named Plaintiffs purchased their LG HVACs from licensed distributors—not LG (Doc. No. 35 at ¶¶ 1–4). Purchases made from someone other than the defendant do not give rise to a claim for unjust enrichment under

---

[4] Plaintiffs listed some of model numbers specifically and others only by product line (Doc. No. 35 at ¶¶ 1–4).

New Jersey law. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, Civil Action No. 09-4146, 2010 WL 2925913, *10-11 (D. N.J. July 21, 2010).

Therefore, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's unjust enrichment claim.

### Conclusion

For the reasons discussed more thoroughly above, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **GRANTED** and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that if Plaintiffs seek to amend their complaint in light of this order, they shall move to do so by April 4, 2014.

**It is SO ORDERED.**

**SIGNED this 5th day of March, 2014.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE