# United States District Court
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| ST. GREGORY CATHEDRAL SCHOOL, ET AL. | §<br>§<br>§   Case No. 6:12-cv-739 |
| v. | §<br>§ |
| LG ELECTRONICS, INC., ET AL. | §<br>§ |

### MEMORANDUM ORDER AND OPINION

Currently before the Court is Defendants LG Electronics, Inc.'s and LG Electronics U.S.A., Inc.'s Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. No. 192). In this putative class action, Defendants are accused of selling defective products through a network of third-party agents and preventing warranty claims by not disclosing defects to consumer purchasers. Plaintiffs obtained leave to file their Third Amended Complaint after the Court dismissed the claims in the Second Amended Complaint without prejudice (Doc. Nos. 121 and 137). Defendants now seek to dismiss each of the newly amended claims on a variety of procedural and substantive grounds, arguing that Plaintiffs' attempts to cure the deficiencies the Court previously identified still fall short. Having considered the parties' arguments and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

### Background and Procedural History

Plaintiffs are residents of twenty-five states that purchased various models of LG-brand heating, ventilation, and cooling units (HVACs) they contend were defective. They propose a

class of anyone in their respective home states that purchased certain models of LG HVACs since 2006.[1]

The Court granted Plaintiffs leave to file their Third Amended Complaint after briefing on their motion for leave, finding that the complaint "was not clearly frivolous, and thus, justice requires leave be granted" (Doc. No. 137 at 2). In the same order, the Court set a briefing schedule on the impending motion to dismiss that is the subject of this order.[2]

Plaintiffs' Third Amended Complaint runs over 200 pages and includes over 1,000 pages of exhibits (Doc. Nos. 138, 139, 140).[3] It alleges 34 counts comprising five federal claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, five claims under New Jersey's RICO statute, and seventeen consumer fraud claims under seventeen different states' laws, one unjust enrichment count under the law of each named plaintiffs' home state, breach of express and implied warranty counts under the law of each named plaintiff's home state, one fraudulent concealment count under the law of each named plaintiff's home state, two counts applicable only to California and Louisiana residents, and one count for declaratory relief under 28 U.S.C. § 2201.

The parties have stipulated to the dismissal of several of those claims (Doc Nos. 224, 229). But dozens of claims under the laws of twenty-five states are still before the Court. As is

---

[1] Although several LG corporate entities are involved in this case, this opinion will oftentimes refer to concerted action on the part of multiple LG entities as simply "LG," collectively.

[2] In response to Plaintiffs' motion for leave to amend, Defendants argued that leave should not be granted because the Third Amended Complaint could not withstand a motion to dismiss. At the time, Plaintiffs opposed applying the motion to dismiss standard to their motion for leave to amend. But in response to Defendants' motion to dismiss, Plaintiffs argued that by granting leave to amend, the Court passed on the sufficiency of the complaint. Plaintiffs cannot have it both ways.

[3] Plaintiffs' claims have only grown in complexity and length as this case progressed. Plaintiffs' Original Complaint was 35 pages and had three state law claims. Their First Amended Complaint added two more named plaintiffs and one more state law claim. The second amended complaint ran 75 pages, included 644 pages of attachments, and added nine more causes of action—including RICO claims for the first time.

relevant to the remaining claims, the Court now sets out the facts as found in the Third Amended Complaint.

Defendant LG Electronics, Inc. (LG Korea) designs and manufactures HVACs in Korea, and then enlists its wholly owned subsidiary, Defendant LG Electronics U.S.A., Inc. (LG USA), to market and sell those HVACs through third-party agents in the United States. LG USA uses a wholly owned subsidiary, LG Alabama, Inc., to provide support for consumer purchasers.[4] The retail selling and servicing of LG HVACs is handled by a licensed network of third-party agents that helped facilitate LG's entry into the HVAC market in the United States.

During the time period relevant to this suit, LG USA provided uniform marketing materials to its third-party agents utilizing specifications supplied LG Korea. The marketing materials for LG HVACs contained representations about the quality of the units, such as their energy usage, noise level, fan speed, and durability. Plaintiffs allege that these representations were uniformly false. LG also issued uniform limited warranties for its HVACs.

Starting as far back as 2004 and continuing throughout the class period, LG Korea learned that certain component parts were failing at rates above industry standards. After internally investigating the cause of the issues, LG Korea requested that its suppliers modify the component parts on several occasions. Year after year, though, problems in the same component parts continued to crop up despite LG Korea's requested modifications.

Eventually, LG issued internal technical service bulletins that acknowledged defects in the problematic component parts. But LG prevented the same third-party agents it used to gain a foothold in the American HVAC market from disclosing the defects to consumer purchasers.

---

[4] LG Korea is incorporated and headquartered in Korea, LG USA is incorporated under the laws of Delaware, but has its principal place of business in New Jersey, and LG AL is both incorporated and headquartered in Alabama.

Further, LG recommended fixes and replacements that would act to only delay problems past the warranty period.

## Legal Standard

Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id*. (quotations and citations omitted). In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

### A. Federal RICO Claims (Counts 1–5)

Plaintiffs allege five violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* Four counts are brought under § 1962(c) of title 18, which prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering activity. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). The fifth count is brought

under § 1962(d) of title 18, which prohibits a person from conspiring to violate any other subsection of § 1962. Additionally, Plaintiffs seek equitable relief under § 1964(a), of title 18.

The Court first addresses Defendants' arguments regarding each element of Plaintiffs' § 1962(c) claims before turning to the viability of Plaintiffs' conspiracy claim and their request for equitable relief.

    i.    **Section 1962(c) Claims (Counts 1–5)**

Defendants contend that Plaintiffs did not plead facts that plausibly establish each element of a claim under § 1962(c). A claim under § 1962(c) requires that a "RICO person" operate a pattern of racketeering activities through a "RICO enterprise." *See Whelan*, 319 F.3d at 229. The RICO person and RICO enterprise must be separate and distinct from one another. *Id.* A RICO enterprise may be either an existing legal entity or it may be a "group of individuals associated in fact." *United States v. Turkette*, 452 U.S. 576, 580 (1981). A pattern of racketeering activity is established by the allegation of at least two "predicate acts," which is defined by statute to include mail and wire fraud. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988) (citing 18 U.S.C. § 1961(3)). Finally, the pattern of racketeering activity must proximately cause the plaintiff's harm. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

    **a. Distinct RICO Enterprise**

Plaintiffs accuse LG of carrying out a pattern of racketeering activity through various combinations of its parent and subsidiary corporations, as well as third-party agents. Because of this corporate relationship, Plaintiffs must plead facts that show LG's decision to operate through subsidiaries and agents allowed it to carry out its pattern of racketeering in a way it could not have if it was wholly integrated. *See Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 934 (7th Cir. 2003); *accord ISystems v. Spark Network Ltd.*, No. 10-10905, 2012 WL 3101672, at

\*4–5 (5th Cir. Mar. 21, 2012). Plaintiffs' failure to do so in the Second Amended Complaint led the Court to dismiss Plaintiffs' RICO claims for lack of a distinct RICO person and RICO enterprise. The Court admonished Plaintiffs that culling a legally sufficient RICO enterprise out of LG's corporate structure required something more than was present in their Second Amended Complaint.

In their Third Amended Complaint, Plaintiffs attempt to plead that "something more" with respect to what they describe as the "LG Syndicate" series of enterprises (Counts 1, 2, and 3).[5] They do so by alleging that LG operated through multiple LG corporate entities to discourage legal claims from disgruntled consumer purchasers. Plaintiffs allege that litigation expenses are increased because serving LG Korea requires complying with the Hague Convention and necessitates English/Korean translation because LG Korea is a Korean-speaking company. Plaintiffs further allege that litigation-related expenses are also increased because suing multiple corporate entities requires propounding discovery on multiple defendants. Plaintiffs contend that these added expenses deter lawsuits and, thus, constitute the "something more" lacking in the Second Amended Complaint.

But these are expenses a plaintiff would face suing any foreign company whether it operated through subsidiaries or not. Further, the existence of multiple defendants in one action does not justify imposing RICO liability on a common business decision to operate through parent-subsidiary relationships. *See Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227–28 (7th Cir. 1997). As such, Plaintiffs still have not pleaded the "something more" required to show that LG's decision to operate through a network of separate corporate entities facilitated the alleged racketeering activity. *See Bucklew*, 329 F.3d at 934; *Fitzgerald*, 116 F.3d at 227–28. Accordingly,

---

[5] The "LG Syndicate" series of enterprises is composed of various combinations of LG Korea, LG USA, and LG Alabama controlling one another and the third-party agents LG used to sell and service its HVACs in the United States.

the Court **DISMISSES** Plaintiffs' RICO claims involving the LG Syndicate (Counts 1, 2, and 3) **WITH PREJUDICE.**

With respect to their fourth RICO count, Plaintiffs have pleaded "something more." Plaintiffs allege that LG Korea and LG USA (the RICO persons) controlled an association-in-fact enterprise of the third-party agents that sell and service LG HVACs in the United States. Plaintiffs describe this association-in-fact enterprise as the "Sales and Service Enterprise." And to establish the "something more" necessary for a distinct RICO person and RICO enterprise, Plaintiffs allege that LG needed the Sales and Service Enterprise to enter the American HVAC market.

Plaintiffs' complaint contains factual allegations about the structure of the American HVAC market at the time LG entered it. Those allegations, if true, establish that without an existing network of third-party agents to sell and service LG HVACs, LG would have faced a much longer and more difficult process of breaking into the market. These factual allegations plausibly allege how LG Korea's and LG USA's decision to operate through a network of third-party agents (the Sales and Service Enterprise) allowed LG to reach the American market in ways it could not have if it attempted to do so on its own. In other words, Plaintiffs pleaded the "something more" necessary to show a distinct RICO person and RICO enterprise. *See Bucklew*, 329 F.3d at 934; *Fitzgerald*, 116 F.3d at 227–28.

### b. Structural Features of the Sales and Service Enterprise

As pleaded in Count 4, the Sales and Service Enterprise (SSE) is an "association-in-fact enterprise." Association-in-fact enterprises must have certain structural features in order to be properly pleaded. But those features are modest, as the Supreme Court requires only that an association-in-fact enterprise be "a continuing unit that functions with a common purpose." *Boyle*

*v. United States*, 556 U.S. 938, 946 (2009) (citing *United States v. Turkette*, 452 U.S. 576 (1981)). Despite this modesty, Defendants argue that the SSE lacks these structural features.

To support that argument, Defendants argue several decisions establish that the SSE lacks a common purpose. Those decisions involve alleged "hub-and-spoke conspiracies" where the RICO person (here, LG Korea and LG USA) acts as the hub, and the association-in-fact enterprise members (here, the third-party agents) act as the spokes. *See, e.g.*, *In re Neurontin Mktg., Sales Practices & Prods.*, 433 F. Supp. 2d 172, 182 (D. Mass. 2006). In the cases Defendants cite, the plaintiffs failed to allege a common purpose that acts as "the rim" connecting the spokes and allowing them to function as a continuing unit. *See, e.g.*, *id.*; *accord Boyle*, 556 U.S. at 946.

As Defendants read the Third Amended Complaint, Plaintiffs alleged an association-in-fact-enterprise comprising disparate companies that individually sell and service products for a profit. Cast in that light, Defendants argue the SSE lacks a common purpose or "rim"—just like the cases they cite.

But the Court draws its inferences in the light most favorable to the non-movants (here, Plaintiffs). *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. It is in that light that the Court now views those facts.

The Third Amended Complaint alleges three facts to demonstrate a common purpose: (1) members of the SSE attended LG-sponsored marketing and training sessions; (2) members of the SSE remained silent after learning of defects in LG HVACs because their agreements with LG required their silence; and (3) LG provided lucrative sales incentives to promote and sell LG HVACs to facilitate their entry into the market.

The cases Defendants cite highlight an essential flaw of the "spokes" lacking awareness that others existed and never communicating with one another. *See, e.g.*, *New England*

*Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 CV 1662, 2014 WL 4783833, at *6 (N.D. Ill. Sept. 25, 2014) ("[T]here are no allegations that pharmacies that comprise the RICO enterprise are in communication with one another or are even aware that other pharmacies are part of the enterprise."). But here, Plaintiffs have alleged that by attending LG-sponsored training events the members of the SSE communicated with one another and were aware of one another. Viewed in the light most favorable to Plaintiffs, it is plausible on the facts as pleaded that there was sufficient communication and awareness between the members of the SSE to support an association-in-fact enterprise, and that is all that is necessary at the motion to dismiss stage. *See Twombly*, 550 U.S. at 570.

Additionally, Plaintiffs allege that members of the SSE chose LG's lucrative incentives over disclosing defects to consumer purchasers.[6] Thus, Plaintiffs alleged a plausible common purpose: profit. And while Defendants are correct that other courts have rejected a "commercial purpose" as sufficient, that is not the case in the Fifth Circuit. *Cnty. of El Paso, Tex. v. Jones*, No. EP-09-CV-00119-KC, 2009 WL 4730303, at *22 (W.D. Tex. Dec. 4, 2009) (citing *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir. 1978)) ("The common interest shared by Defendants was making a profit"). Therefore, applying the relatively low threshold of plausibility pleading, the Court finds that the facts Plaintiffs pleaded state a plausible association-in-fact enterprise. *See Twombly*, 550 U.S. at 570; *accord Boyle*, 556 U.S. at 946.

### c. Predicate Acts

The Court previously rejected Plaintiffs' mail fraud allegations because the facts alleged did not plead fraud with particularity. *Accord* Fed. R. Civ. P. 9(b). In the Second Amended

---

[6] Defendants also contend that the SSE is not a proper RICO enterprise because Plaintiffs alleged nothing that shows LG conducted or participated in the affairs of the SSE. But the Third Amended Complaint alleges that LG used the non-disclosure provisions of their sales and service agreements to keep the members of the SSE from disclosing defects to their consumer purchasers. This allegation shows LG's conduct and participation.

Complaint, Plaintiffs tied their fraud allegations to technical service bulletins LG Korea issued after LG received complaints about defects in its HVACs. Those allegations failed for two reasons. First, technical service bulletins are not proper evidence of fraud. *See Alban v. BMW of N. Am.*, CIV. 09-5398, 2011 WL 900114, at *12 (D. N.J. Mar. 15, 2011). Second, the timing of the technical service bulletins undermined Plaintiffs' fraud allegations because the bulletins necessarily post-dated the marketing materials Plaintiffs claimed were fraudulent.

The Third Amended Complaint relies largely on evidence with the same timing. But instead of technical service bulletins, Plaintiffs allege that LG's fraud is established by internal reports on the defect rates of component parts created after consumer purchasers complained about them. If their allegations stopped there, Plaintiffs' mail fraud allegations would likely be insufficient. *See Anctil v. Ally Fin., Inc.*, 2014 WL 587364 at *11–12 (S.D. N.Y. Feb. 10, 2014) (holding mail fraud was not pleaded with particularity because no allegations tended to indicate defendants made statements with an intent to defraud). This time, however, Plaintiffs include allegations that more particularly suggest a fraud.

Unlike Plaintiffs' Second Amended Complaint, the Third Amended Complaint alleges facts about what occurred after LG Korea diagnosed the defects in various component parts. Instead of mere conclusory allegations that LG attempted to stanch the fallout, Plaintiffs now allege the particularities of how LG required silence from its third-party agents, recommended repairs that would operate only as a band-aid, and replaced defective component parts with ones that came from the same defective batch as those being replaced. These factual allegations state—with particularity—numerous instances of LG using the mail and wires of the United States to disseminate information to prevent warranty claims from being made and subverting the representations and warranties LG previously made through the mail and over wires. As such,

Plaintiffs' Third Amended Complaint pleads mail fraud with particularity. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) ("The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element'").

### d. Proximate Cause

For a RICO claim, proximate cause exists when there is "some direct relationship between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Unlike common law fraud, RICO does not require an allegation or proof that a RICO plaintiff directly relied on the misrepresentation. *See Bridge*, 553 U.S. at 649 ("a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations"). Indeed, reliance may not be necessary at all. *Id.* at 659 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 478 (2006) (Thomas, J., concurring in part)) ("[I]t may well be that a RICO plaintiff . . . must establish at least third-party reliance . . . . 'But the fact that proof of reliance is often used . . . does not transform reliance itself into an element of the cause of action.'"). Instead, all a RICO plaintiff needs to show is that they were "the primary and intended victims of the scheme to defraud." *Id.* at 650.

Nevertheless, Defendants argue that Plaintiffs have not pleaded proximate cause because no named plaintiff alleges that they relied on LG's marketing materials. But Plaintiffs clearly alleged that LG's marketing and sales strategy was "specifically aimed to increase [LG's] market share in [HVACs sales]—[sales] for which [consumer purchasers] would pay." *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 60, 67 (1st Cir.), *cert. denied sub nom. Pfizer Inc. v. Kaiser Found. Health Plan, Inc.*, 134 S. Ct. 786 (2013). In view of those factual allegations,

Plaintiffs alleged "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268.

Therefore, Plaintiffs adequately pleaded a plausible RICO claim with respect to their fourth RICO count (the Sales and Service Enterprise). As such, the Court **DENIES** Defendants' motion to dismiss Count 4 of the Third Amended Complaint.

### ii. RICO Conspiracy (Count 5)

Plaintiffs adequately pleaded that LG Korea and LG USA agreed to carry out a pattern of racketeering activities in violation of § 1962(c). As such, Plaintiffs have also sufficiently pleaded a RICO conspiracy claim on the same grounds under § 1962(d). *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) ("Plaintiffs specifically alleged that the Defendants entered into an agreement and that each agreed to commit at least two predicate acts of racketeering. These allegations are specific enough to state a claim that the Defendants conspired to violate § 1962(c)."). Therefore, the Court **DENIES** Defendants' motion to dismiss Count 5 of the Third Amended Complaint.

### iii. Request for Equitable Relief

Plaintiffs request several forms of equitable relief pursuant to § 1964(a). The Fifth Circuit has yet to resolve whether equitable relief is available in civil RICO actions. *Richard v. Hoechst Chem. Grp. Inc.*, 355 F.3d 345–55 (5th Cir. 2003). But it has made it clear that disgorgement of profits is not a proper remedy. *Id.* Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' request for disgorgement of profits under § 1964(a).

As to the remaining requests for equitable relief under § 1964(a), the Court declines to decide whether that relief is available and assumes these remedies exist at this stage of the litigation. *See Cunningham v. Offshore Specialty Fabrications, Inc.*, 543 F. Supp. 2d 614, 641 (E.D. Tex. 2008).

### B. New Jersey RICO Counts (6–10)

Plaintiffs' Third Amended Complaint alleges several state law causes of action. For all but their New Jersey RICO counts, Plaintiffs allege each state law cause of action under the laws of each named plaintiff's home state.

Defendants move to dismiss the NJ RICO counts on procedural and substantive grounds. Defendants' procedural grounds are that choice of law principles preclude New Jersey's RICO statute from applying to all of Plaintiffs' claims. The substantive grounds are that Plaintiffs did not plead plausible claims.

The Court turns first to the procedural grounds. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). As this Court sits in Texas, it is obligated to apply Texas choice of law rules. *Burleson v. Liggett Grp., Inc.*, 111 F. Supp. 2d 825, 828 (E.D. Tex. 2000). Texas courts first determine whether the potentially applicable laws conflict. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000). When a conflict exists, Texas courts use the "most significant relationship test" of the Restatement (Second) of Conflict of Laws (the Restatement) to resolve the conflict. *See id.* The Restatement sets out both general principles and claim-specific factors to consider. *See Hughes Wood Prods., Inc. v. Wanger*, 18 S.W.3d 202, 205 (Tex. 2000). Texas courts look to § 148 of the Restatement for fraud-based claims. *See Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 293–96 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

A conflict of laws clearly exists because the states at issue either lack a civil RICO statute or the elements differ materially from New Jersey's RICO statute. *See Ferris, Baker Watts, Inc. v. Deutsche Bank Sec. Ltd.,* No. 02-3682, 2004 WL 2501563, at *3 (D. Minn. Nov. 5, 2004)

(holding that the breadth of New Jersey's RICO statute created conflict of law). In view of the conflict, the Court applies the six factor test of Section 148(2) of the Restatement:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflicts* § 148(2) (1971).

Plaintiffs allege that they acted in reliance on the misrepresentations in their home states, do business in home states, possess the HVACs in home states, and rendered performance under their contracts in their home states. LG Korea does business in Korea and transmitted the allegedly fraudulent information from Korea. Thus, as a matter of rote application, the factors weigh in favor of Plaintiffs' home states—not New Jersey.

Applying the appropriate weight to each factor gives the home states an even greater advantage. First, comment g. to § 148 of the Restatement indicates that the state where the plaintiff relied on the defendant's representations is of greater importance than where the defendant made them. Next, comment j. indicates that when any two factors (other than the defendant's residence and place where the defendant made the representations) occur in one state, that state "will usually be the state of applicable law." *See Tracker*, 108 S.W.3d at 356. As pleaded, four factors implicate the home states. Finally, comment h. undercuts New Jersey's significance by lessening the importance of the place where the defendant made the representation when more than one forum is implicated, which it is here. Thus, the Court finds that Plaintiffs did

not plead facts that if true give rise to a plausible inference that New Jersey's substantive law governs each plaintiff's claims.

Therefore, the Court **GRANTS** Defendants' motion to dismiss the NJ RICO counts for each Plaintiff except Plaintiff Mamta Enterprises, Inc., a New Jersey corporation. As to Plaintiff Mamta Enterprises, the Court **DENIES** Defendant's motion in accordance with its previous determination that the New Jersey RICO statute does not have the same distinctiveness requirement as the federal RICO statute (Doc. No. 121 at 7) and the above analysis of Plaintiffs' federal RICO counts.

### C. Remaining State Law Claims (Counts 11–33)

Defendants move to dismiss each state law claim Plaintiffs pleaded on a variety of grounds. The Court's review of the briefing demonstrates that Defendants' arguments would be better addressed with an evidentiary record rather than on the pleadings.

Further, many of Defendants' arguments are more properly addressed at the certification stage. Defendants move to dismiss the state law claims pursuant to various combinations of the following arguments: Named plaintiffs did not comply with various statutory notice requirements, do not fit statutory definitions, do not possess standing, or are subject to statutes of limitation. These arguments implicate the consideration of adequacy of representation under Federal Rule of Civil Procedure 23(a)(4). Additionally, the sheer volume of claims also implicates the predominance and superiority requirements of Rule 23(b)(3).[7]

---

[7] The volume of Plaintiffs' claims prevented the parties from adequately briefing each of the claims—even with increased page limits. That the parties could not adequately address whether these claims are pleaded plausibly suggests to the Court that the parties would similarly struggle to present all of these claims to a jury.

Accordingly, the Court **DEFERS** consideration of Defendants' arguments regarding the remaining state law claims. Fed. R. Civ. P. 12(i).[8]

### Conclusion

For the reasons stated more thoroughly above, the Court **ORDERS** the following:

(1) Defendants' motion to dismiss Counts 1–3 of the Third Amended Compliant is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

(2) Defendants' motion to dismiss Count 4 of the Third Amended Complaint is **DENIED**.

(3) Defendants' motion to dismiss Counts 6–10 of the Third Amended Compliant is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**, except as to Plaintiff Mamta Enterprises.

(4) Defendants' motion to dismiss Counts 11, 13–15, 19, 21–24, and 26–32 of the Third Amended Compliant is **DEFERRED.**

**It is SO ORDERED.**

**SIGNED this 13th day of March, 2015.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

---

[8] The parties jointly stipulated to the dismissal of Counts 12, 16–18, 20, 25, and 33 (Doc. No. 224).